## No. 11,842.

### TROUTMAN v. WEBSTER.

Decided June 13, 1927.

Action by real estate broker to recover commission. Judgment for plaintiff.

### *Affirmed.*

1. BROKERS—*Real Estate—Evidence.* In an action by a broker for commission, it is held that the jury was justified in finding that plaintiff, in accordance with his agreement, ceased his efforts to sell the property for the owner in consideration that he be paid one-half the usual commission if a sale was made.

2. CONTRACT—*Consideration.* It is a consideration if the promisee, in return for a promise does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, even though there is no actual loss or detriment to him or actual benefit to the promisor.

3. APPEAL AND ERROR—*Brokers—Commission.* Judgment for owner's agent suing on an agreement to pay a commission if he ceased his efforts to sell the property, and let the parties deal direct, held sustained by the evidence.

4. BROKERS—*Commission.* Where owner's agent at the suggestion of a prospective buyer, agreed to cease his efforts to sell the property in consideration of receiving one-half the usual commission in case a sale was made, the fact that the conveyance, after sale, was made to buyer's principal rather than to himself, held immaterial.

*Error to the County Court of the City and County of Denver, Hon. G. A. Luxford, Judge.*

Mr. PAGE M. BRERETON, for plaintiff in error.

Mr. JOSEPH J. WALSH, Mr. DONALD F. CLIFFORD, for defendant in error.

*Department Two.*

Mr. Justice Campbell delivered the opinion of the court.

This action was begun before a justice of the peace, where there was a judgment for the defendant Troutman. On appeal to the county court judgment was for the plaintiff Webster. · As there are no written pleadings, the character of the action is ascertainable only from the evidence. While the plaintiff was employed by, and was in the service of, Mr. Wigle, a real estate broker, one Miller, owner of a dwelling house in the city of Denver, left his property for sale with plaintiff's employer. Negotiations and efforts to effect a sale were carried on by Webster for Wigle, but before a sale was effected plaintiff severed his connection with Wigle and thereafter was permitted, both by Miller, the owner, and Wigle, to continue his efforts for the sale of the property. While plaintiff was with Wigle he endeavored to sell to the defendant, Mr. Troutman, and was the first person to call Troutman's attention to the property. Plaintiff and Troutman were not able to reach an agreement as to the selling price, although negotiations continued for a number of days. The owner being heavily in debt was anxious to sell, and Troutman wanted to acquire the property. It was finally suggested by Troutman to the plaintiff that, perhaps, if the plaintiff would drop out of the deal he, the proposed buyer, might be able to agree upon terms with the owner directly and not through the plaintiff as intermediary. Accepting the suggestion the plaintiff consented to and did drop out, but he says it was upon the specific promise by the defendant, if he did so, and the sale was effected, as it was later, that the defendant Troutman would pay to the plaintiff one-half the usual commission to a broker in such cases. Plaintiff reported this arrangement to Miller and said that Troutman thereafter would deal with him directly. Thereupon Miller and the defendant themselves reached an agreement of sale and the property was conveyed to

the defendant's wife. After the deed was executed the defendant refused to pay the commission and this action was brought to compel it. There is no testimony, in so many words, that the plaintiff ceased to act as agent for the seller, but there is no evidence whatever that he took any further part in the sale to Troutman or to any one else, after his alleged agreement to drop out was made. The jury was justified in finding that the plaintiff ceased his efforts as agent of Miller and strictly complied with his understanding with Troutman to take no further part in the negotiations. The only assignment of error here by the defendant is that no consideration was given by plaintiff Webster to defendant Troutman in consideration of Troutman's promise to pay a commission. We do not so read the evidence. Counsel's reliance is largely upon the case of *Sharp v. Hoopes,* 74 N. J. L. 191, and similar authorities. Hoopes sued to recover his commission for the sale of property where the promise sued upon was made for services previously rendered without any request, express or implied by the promisor. The court held that the promise was devoid of any consideration to support it. See Williston on Contracts, Vol. 1, sec. 102a, p. 199, and sec. 103c, p. 211. Without questioning the doctrine of the case cited we think it inapplicable to the facts of the present case. While the evidence is conflicting, here the jury, under proper instructions, found for the plaintiff and as the evidence is legally sufficient to sustain the finding we must assume that the facts are as plaintiff testified. When Troutman intimated to Webster that it was his desire to deal directly with the owner and that it would be more advantageous to him than to deal with Webster as intermediary and suggested that Webster drop out of the transaction, Webster said that he would do so if Troutman would pay one-half the usual commission, which he says Troutman agreed to do. Assuming as we must, the facts to be as Webster says, we think the rule applicable in this case is laid down in 13 C. J., p. 315, par. 150,

and at p. 318, where it is said that it is a consideration if the promisee, in return for a promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, even though there is no actual loss or detriment to him or actual benefit to the promisor. In 1 Williston on Contracts, p. 198, sec. 102a, the author says: "Benefit and detriment have a technical meaning. Neither the benefit to the promisor nor the detriment to the promisee need be actual. It would be a detriment to the promisee, in a legal sense, if he, at the request of the promisor and upon the strength of that promise, had performed any act which occasioned him the slightest trouble and inconvenience, and which he was not obliged to perform. * * * Detriment, therefore, as used in testing the sufficiency of consideration means legal detriment as distinguished from detriment in fact. It means giving up something which the promisee had a right to keep or doing something which he had a right not to do."

Applying this rule thus stated by the learned author to the facts of this case we say that Webster suffered a legal detriment at the instance of Troutman. He ceased his employment for the seller and it makes no difference whether or not this resulted in benefit to Troutman. This principle is anounced in *Dyer v. McPhee,* 6 Colo. 174. We said in that case, citing Parsons on Contracts, "that if a benefit accrues to him who makes the promise, or if any loss or disadvantage accrues to him to whom it is made, and accrues at the request or on the motion of the promisor, although without benefit to the promisor, in either case the consideration is sufficient to sustain assumpsit." 1 Parsons on Contracts, *431. In this case Troutman at least thought that it would or might be a benefit to him, as it proved to be, when Webster dropped out of the negotiations and ceased his efforts in behalf of Miller to make the sale, which as matter of fact was consummated by Miller, the owner, and Troutman, the purchaser, after Webster's withdrawal (which

was at the suggestion of Troutman himself). And this is so even though benefit did not accrue to the latter. In *Clark v. Sigourney,* 17 Conn. 510, 517, it was said: "Any act done by the promisee, at the request of the promisor, by which the former sustains any loss, trouble or inconvenience, constitutes a sufficient consideration for a promise, although the latter obtains no advantage therefrom." See also *Fearnley v. De Mainville,* 5 Colo. App. 441, 39 Pac. 73. In *Jones v. Jones,* 1 Colo. App. 28, 32, 27 Pac. 85, it was said, that: "A valuable consideration in the sense of the law may consist either in some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered or undertaken by the other." The county court in this case specifically instructed the jury that they could not allow the plaintiff any compensation for services already performed by him in this transaction which were not rendered at the request of the defendant, but in the interests of the former owner of the property, and further, for such services to the former owner of the property the plaintiff could not look to the defendant in this case. It is clear, therefore, that the jury, if it followed these instructions, must have made the allowance to the plaintiff in this case not for past services which he had rendered to Miller, the former owner of the property, but for the detriment which he sustained by dropping out of the transaction and foregoing further attempts to sell this property either to the defendant or to third persons. To say the least, in this case there was testimony in behalf of the plaintiff upon which the judgment may rightly rest.

The further point made by the defendant that the conveyance of this property was not to the defendant, but to his wife, we think is not important, because the contract sued on in this action is one directly between him and Webster, whereby Troutman was to pay plaintiff commission if he would cease acting as agent for the seller. It appears throughout the transaction that Mr.

Troutman was, as matter of fact, acting in the premises as the agent of his wife and had authority to do so. Besides, if Troutman saw fit to promise payment to plaintiff of the customary one-half of the commission in such cases, if the latter, as he did, ceased further effort in the sale of the Miller property, it was presumably because he considered it of some benefit to him, as it was, to have free rein in negotiating directly with the owner, and not indirectly through the owner's agent. The result of the transaction appears to be, according to the defendant's own testimony, that he was able to make a better deal himself directly with such owner than he could have made through the plaintiff. The judgment is therefore affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE ADAMS and MR. JUSTICE BUTLER concur.