## No. 11,969.

ANTLERS ATHLETIC ASSOCIATION *v.* HARTUNG, ET AL.

Decided December 31, 1928.   Rehearing denied February 4, 1929.

Mr. CHARLES GINSBERG, Mr. HAROLD G. KING, for plaintiff in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. JOHN C. VIVIAN, Assistant, Mr. MORTON M. DAVID, Mr. JAMES J. ROACH, for defendants in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS is an action by The Antlers Athletic Association, a corporation organized under the laws of the state of Colorado, against Gus Hartung, Norton Montgomery and Walter F. O'Brien, as members of the State Boxing Commission of Colorado, and The American Legion, Department of Colorado, a corporation. The avowed object of the action is to have a determination of the constitutionality of certain sections of chapter 70, Session Laws 1927, p. 227, entitled: "An Act relating to boxing and sparring matches, creating and establishing a State Boxing Commission." The plaintiff private corporation was not organized for profit to itself, or, to its members, but for giving public boxing exhibitions in the city of Denver, the net proceeds of which are to be devoted exclusively to charity, and paid into the charity fund of the Denver Lodge of Benevolent and Protective Order of Elks and by the latter expended for charitable purposes, including aid to the poor and sick, and to dependent children. The defendant commission, by the provisions of the boxing act, is given sole supervisory power, direction and management and control over boxing exhibitions in the state. The statute provides at length and specifically for the regulation, control and licensing by the commission of such exhibitions and those who participate therein. At least two members of the

defendant commission shall be honorably discharged soldiers, sailors, or marines of the United States. By section 7 a tax of five per cent of the gross receipts derived from such exhibitions is imposed, and those to whom authority is given to hold such exhibitions are required by section 3 to have a lease of at least one year of, or to own, the premises wherein such exhibitions are conducted. To this requirement there is a qualification that the Grand Army of the Republic, United Spanish War Veterans, the Veterans of the Foreign Wars of the United States, the American Legion, and the Disabled American Veterans of the World War, are exempted or excused from payment of the five per cent tax and from a compliance with the one year's lease, or ownership, provision. The license fee exacted of those not within the exempted class mentioned varies in the different communities where the exhibitions are held, based upon their population. By section 14 the proceeds of this tax imposed on citizens and corporations generally to whom licenses are issued authorizing the giving of such exhibitions, above the sum of $7,500, which is allowed for the expenses of the commission, are to be appropriated and used under regulation of the General Assembly to maintain the State's Soldiers' and Sailors' Home at Monte Vista, Colorado. The specific prayer of the complaint setting out the foregoing facts, is for both a temporary and permanent injunction enjoining the defendants, as the State Boxing Commission, from collecting or attempting to collect the five per cent tax or license fee imposed by section 7 of the act, and from inflicting upon plaintiff any of the penalties provided by the act for failure to pay the same. Further relief is asked exempting the plaintiff from holding its contests only upon premises upon which it has a lease for a year, or which are owned by it, and from imposing the penalties provided in the act for its failure to comply therewith. These provisions attacked, plaintiff asks the court to declare to be unconstitutional and void for various reasons,

and particularly on the ground that the same are in contravention of section 1 of the Fourteenth Amendment to the Constitution of the United States in that the classification made by the legislature, putting ex-service men or ex-service men's organizations in one class, and all other individuals and organizations in another for the purpose of taxation so as to exempt the former and assess the latter, is discriminating. Such other provisions of our boxing statute as may be pertinent to our discussion will be noted in the opinion.

The plaintiff in its argument assumes that the tax or license fee imposed by this act is a tax on property or, at least, a tax or license fee upon a business or an occupation which it has a constitutional right to conduct without the consent of the state. Whether the fee imposed is a tax, in the ordinary meaning of the term, or is merely a license fee for the privilege of conducting a business, we think is not material. Whatever it be denominated, it is an exaction by the state of one who conducts a boxing exhibition for the privilege of doing so. If the business or occupation of conducting public boxing exhibitions or prize fights is legitimate; i. e., if the one engaging in it has a constitutional right to do so, without permission of the state, or in disregard of its inhibition, then the exaction, whatever name the law-making body gives to it, must not be so excessive or onerous as practically to prevent conduct of the business at a reasonable profit, and no discrimination as between citizens and corporations may be made. But if the business is one which may not be pursued without such permission, or in the absence of such inhibition, then the tax may lawfully be so high or great as practically to prohibit citizens engaging therein. If such a business is permissible only when the state so authorizes, or does not put an embargo thereon, and we think this is the unquestioned law, then the license provided for in this act may not be held void on the ground that it is excessive or discriminatory. "A

license confers the right to do that which without the license would be unlawful." *People v. Raims*, 20 Colo. 489, 39 Pac. 341. In 37 C. J., page 183, section 29, it is said that although under a general power to license or regulate or tax occupations and privileges a useful occupation or privilege may not be directly or indirectly entirely prohibited, nevertheless, "as to those occupations which, while they are tolerated, are recognized as being hurtful to public morals, productive of disorder, or injurious to the public, license fees or taxes may be so imposed as to discourage and even break them up." See also *Montgomery v. Kelly*, 142 Ala. 552, 38 So. 67, 70 L. R. A. 209. And in 37 C. J., page 187, section 37, the author says that as regards such occupations as the legislature or taxing power may declare to be harmful to society or the public welfare, taxes may be so heavy as to entirely prohibit them, citing in support the Raims case, supra. It would seem to follow that, as public sparring and boxing exhibitions and prize fights are generally in this country considered not to be promotive of the public welfare; at least, that they tend to disorderly meetings and sometimes to riotous conduct, they could not be, without legislative permission, and in this state for a number of years and until this statute was passed have not been, tolerated. It is only because of the provisions of this permissive statute and under the regulations therein provided that they may now be conducted at all. We are aware that some courts have, and other courts have not, distinguished between prize fights and boxing or sparring exhibitions. The courts generally, however, class all such exhibitions, where the contest is one for gain or reward, as in the nature of prize fights regardless of the name given them. Our statute has attempted to differentiate between prize fights and boxing exhibitions. However that may be, this statute has provided expressly how and under what conditions public boxing exhibitions may be conducted. Citizens and cor-

porations generally, not being authorized to promote or conduct them without permission of the state, which has been by this statute qualifiedly given, must accept the privilege so given under the conditions and subject to the qualifications prescribed by this permissive statute. Such being true, the plaintiff in this case, a voluntary private corporation, though it is organized to promote a worthy charity, is not in a position to be heard to say that the fee prescribed by this statute is excessive, or that the statute itself is discriminatory and puts into one class certain ex-service men and ex-service men's associations, and into another class equally worthy persons or associations, and withholds from the latter the privilege to conduct boxing exhibitions upon the same or equally favorable terms as are granted to the privileged or first mentioned class. These corporations and persons generally against whom the discrimination operates have no constitutional right to engage in such an occupation or business without permission of our legislature; and since that body in this act has coupled with the privilege to them the condition that they must either have a lease for at least one year upon, or own, the premises where the exhibition is to be conducted, and to pay a certain tax or license fee, while ex-service men and designated corporations formed by them may conduct such exhibitions without having such a lease or owning the premises at all, and are not required to pay any license fee therefor, the former class may not be heard to complain of the alleged discrimination which has been made. There are certain facts of which courts take judicial notice. Matters that are of common knowledge, the public discussion in newspapers as here over the propriety of the legislature in permitting boxing exhibitions, may properly be taken into consideration by the courts. The members of this court cannot blind themselves to historical facts of which as individuals they are cognizant. When the bill now under consideration was pending in our legislature it was

met with vigorous opposition. In order to secure its passage into a law it was deemed necessary by those who were promoting it to yield to public sentiment, as expressed in the debates in the legislature, by inserting these various provisions about the management and control of boxing exhibitions. It is doubtful if the bill could have been, or would have been, enacted into a law had not these provisions been incorporated for the management and control by persons who had been soldiers or sailors of the United States, and without the safeguards and classification, and the placing in a preferred class, exhibitions either conducted or controlled by those who had been in the active military service of the United States.

While in the complaint the statute is alleged to be void on the ground that it deprives plaintiff of property without due process of law and denies to it equal protection of the laws, the real objection to this act is that it contains an unwarranted discrimination as between the plaintiff and the ex-service men and the corporations which they have formed. It is entirely clear that the only question of importance, and one that calls for consideration, is the alleged discrimination. The other objections are not tenable and are not, as we understand it, seriously argued.

We may rightly presume that our legislature was conversant with matters of general history, and its members were aware of the fact that boxing exhibitions are not infrequently accompanied by disorder, riots and sometimes those in attendance engage in quarrels and fights among themselves and interfere or attack the referees or those who are supervising such exhibitions, and even engage in controversies with the participants themselves. Persons who attend these exhibitions are more or less unduly aroused and stirred by the contests. Soldiers and sailors of the United States are trained physically in the art of boxing as one of the requirements or practice

to fit them for actual warfare. Boxing exhibitions, control and management of which are vested in ex-service men or ex-service men's associations, would be more likely to be better managed, and more free from unseemly quarrels and bickerings than would be the case where citizens not so trained are conducting them. At least our legislature deemed it more conducive to public order to provide that boxing exhibitions should be supervised and controlled and managed by a body of men, at least two of whom had been trained for military service and who had been actually engaged in warfare. We cannot put our judgment against that of the members of the legislature in determining such a question as this. We certainly cannot say that the legislature acted arbitrarily or in excess of its power in discriminating in favor of ex-soldiers and marines, and vesting in the commission, the majority of whose members had been thus trained, sole charge and control of boxing exhibitions. The exemption, provided in the statute as to the prescribed fee and the ownership or lease upon the building where the exhibitions are conducted by ex-service men and their organizations, does not make the classification void. The reasons already given why the legislature was authorized to make it equally apply to the exemption features of the statute. Our sister states have gone far in holding statutes like this a valid exercise of the police power of the state to protect the health, safety and morals and promote the general welfare of the people and as not denying due process of law or being unjust discrimination. Without commenting at any length on these cases, some of them are cited, including *Murphy v. People,* 225 U. S. 623, 32 Sup. Ct. 697, 56 L. Ed. 1229, 41 L. R. A. (N. S.) 153. In that case the court said that while the Fourteenth Amendment protects a citizen in his right to engage in any lawful business, it does not prevent legislation intended to regulate occupations which because of their nature may prove injurious or offensive to the public, nor does it

prevent regulations prohibiting any business which is inherently dangerous or harmful to the public morals or general welfare. In one of our own cases (*Consumers' League of Colorado v. Colorado & Southern Railway Co.,* 53 Colo. 54, 125 Pac. 577, Ann. Cas. 1914 A, 1158), we said that when a business or occupation has become subject to the exercise of the police power of the state, any classification made in the exercise of that power would be upheld unless wholly unreasonable and arbitrary. We do not believe that the classification of this act is of the objectionable character. In *State v. Snyder,* 29 Wyo. 199, 212 Pac. 77, a statute of the state which exempted the property of veterans of the Spanish-American and World Wars from taxation to the amount of $2,000, was held not to be in violation of the uniformity and equality clause of the Wyoming Constitution since such exemption was a means of promoting the public welfare as it was intended to serve a public purpose.

The cases cited by the plaintiff in this case upon the subject of discriminating statutes, upon examination will be found to be restricted to a business or occupation of which the one conducting it has a constitutional right to engage in without the consent of the legislature. We have found no case that can justly be claimed as authority for the contention of plaintiff here that a statute may be held discriminatory which classifies, as the statute under consideration does, persons and corporations who desire to engage in an occupation which they may pursue only by consent of the sovereign state.

Our conclusion is that the complaint is not well founded and that the judgment of the district court must be, and it is therefore affirmed.

All the Justices concurring, except MR. CHIEF JUSTICE DENISON not participating.