No. 13,567.

GRONERT *v.* THE PEOPLE.
(37 P. [2d] 396)

Decided October 22, 1934.

Mr. CHARLES ROSENBAUM, Mr. HYMAN D. LANDY, Mr. GRAHAM SUSMAN, for plaintiff in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. J. GLENN DONALDSON, Assistant, Mr. CHARLES H. QUEARY, Assistant, for the people.

*En Banc.*

MR. JUSTICE BUTLER, sitting for MR. CHIEF JUSTICE ADAMS, delivered the opinion of the court.

E. J. GRONERT was convicted of violating the Money Lenders Act (S. L. 1919, c. 159, C. L., c. 63). He seeks a reversal of the sentence.

Gronert was charged in four counts, to-wit: (1) With engaging in the business of making loans of less than $300 and charging, contracting for and receiving a greater rate of interest than twelve per cent per annum, without first obtaining a license; (2) with making a loan of less than $300 to Thelma C. Anderson and charging a greater rate of interest than twelve per cent per annum; (3) with contracting with her for a greater rate of interest than twelve per cent per annum for said loan; and, (4) with receiving from her a greater rate of interest than twelve per cent per annum for said loan. The first count charged a violation of section 1 (C. L. §3781); the others, violations of section 17 (C. L. §3797). He was found guilty on all counts.

Gronert's counsel contend that the Money Lenders Act is unconstitutional for two reasons, namely: (1) That on the passage of the bill through the Legislature its purpose was changed; (2) that the subject of the statute is not expressed in the title.

1. *Change of purpose.*

Section 17 of article 5 of the Colorado Constitution provides: "* * * no bill shall be so altered or amended on its passage through either house as to change its original purpose."

The title of the bill, as it was when introduced in the Legislature, was as follows: "A bill for an act to license and regulate the business of making loans in sums of five hundred dollars ($500) or less, secured or unsecured, at a greater rate of interest than twelve (12) per centum per annum, prescribing the rate of interest and charge

therefor, and penalties for the violation thereof, and regulating the assignment of wages or salaries, earned or to be earned, when given as security for any such loan.''

Section 1 of the bill read: ''That no person, co-partnership, or corporation, shall engage in the business of making loans of money, credit, goods, or things in action in the amount, or to the value of five hundred dollars ($500), or less, and charge, contract for, or receive a greater rate of interest than twelve (12) per centum per annum therefor, *except as authorized by this Act* and without first obtaining a license from the State Bank Commisioner hereinafter called the licensing official.''

Section 13 of the bill provided in part: ''Every person, co-partnership and corporation licensed hereunder may loan any sum of money not exceeding in amount the sum of five hundred dollars ($500) and may charge, contract for and receive thereon interest at a rate not to exceed three (3) per centum per month on any loan less than one hundred dollars ($100) and not to exceed two (2) per centum per month on any loan of one hundred dollars ($100) or over.''

Section 17 of the bill read in part: ''No person, co-partnership, or corporation, *except as authorized by this Act* shall, directly, or indirectly, charge, contract for, or receive any interest, or consideration greater than twelve per centum per annum upon the loan, use, or forbearance of money, goods, or things in action, or upon the loan, use, or sale of credit, of the amount, or value of five hundred dollars '($500) or less. * * * No loan for which a greater rate of interest or charge than is allowed by this Act has been contracted for or received wherever made, shall be enforced in this State, and any person in any wise participating therein in this State shall be subject to the provisions of this Act.''

The bill also contained, and the statute contains, provisions concerning license fees, bonds, revocation of licenses, keeping of records by licensees, and other regu-

lations. Banks, trust companies, title guaranty companies, building and loan associations and licensed pawnbrokers were excluded from the operation of the bill, and are excluded from the operation of the statute.

As it emerged from the Legislature, the title and sections 1 and 17, so far as important to this discussion, were substantially unchanged, excepting the maximum amount of the small loans, which was changed from $500 to $300. A radical change, however, was made in section 13, which, as it appears in the statute, provides in part as follows (C. L. §3793): "Every person, co-partnership and corporation licensed hereunder may loan any sum of money not exceeding in amount the sum of three hundred dollars ($300) and may charge, contract for and receive thereon interest at the rate of *not to exceed one (1) per centum per month.* * * * If interest, or charges in excess of those permitted by this act shall be charged, contracted for, or received, the contract of loan shall be void and the licensee shall have no right to collect, or receive any principal, interest or charges whatsoever."

The purpose of the bill, as introduced, was to license the business of making small loans *at a greater rate of interest than twelve per cent per annum,* and to regulate such business. A license is a permit to do a certain thing; it confers a right to do that which without the license would be unlawful. *Parsons v. People,* 32 Colo. 221, 76 Pac. 666; *Antlers Athletic Association v. Hartung,* 85 Colo. 125, 274 Pac. 831; *People v. Raims,* 20 Colo. 489, 39 Pac. 341; *Board of County Commissioners v. Mayr,* 31 Colo. 173, 74 Pac. 458; *Schwartz v. People,* 46 Colo. 239, 104 Pac. 92. The amendment of section 13 changed the original purpose of the bill, so as to *forbid* the licensing and regulating of the business of making small loans at interest *greater* than one per cent per month. The statute, instead of regulating the business described in the title, prohibits it, and attempts to regulate the business of making small loans at interest *less*

than twelve per cent per annum. The business that the bill originally permitted is by the statute made a crime. Such a change of purpose comes within the inhibition of section 17 of article 5, supra.

■ 2. *The title.*

The change referred to above also brings the statute into conflict with section 21 of article 5 of the Colorado Constitution, which is as follows: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

In *People v. Friederich,* 67 Colo. 69, 185 Pac. 657, it was held that a statute providing for the protection of "girls *under* the age of 18 years" was void because it did not come within the title, "An act for the protection of girls 18 years of age." The court said:

"By all authority and precedent it is firmly settled that the purpose of a statute must be ascertained and determined by its title, and that the title is presumed to be the controlling and conclusive index of the legislative intent. In the case at bar it cannot be said that the title of the act in question indicates, either to lawyer or layman, the general scope and purpose of the act. The body of the act shows positively that it is intended for the protection of girls under eighteen years of age; the title limits its application specifically to girls eighteen years of age.

"It is by no means sufficient that a general idea of the legislative intent may be gathered from the body of an act. It was declared in In re Breene, 14 Colo. 401, 24 Pac. 3, as follows:

" 'Moreover, we are bound to assume that the word "clearly" was not incorporated into the constitutional provision under consideration by mistake. It appears in but few of the corresponding provisions of other state

constitutions—a fact that could hardly have been unobserved by the convention. That this word was advisedly used, and was intended to affect the manner of expressing the subject, we cannot doubt. The matter covered by legislation is to be "clearly," not dubiously or obscurely, indicated by the title. * * *'

"It manifestly cannot be said that girls under eighteen years of age, as expressed in the act, are of the same age or class as girls eighteen years of age, specified in the title. It was to prevent just such obscurity, confusion and uncertainty that the constitutional provisions were enacted."

Under the first count of the information, Gronert was sentenced to imprisonment as a criminal for failing to obtain a license to do that which he could not lawfully do if he had a license. In effect, the title of the statute before us says "You may;" the statute, "You shall not." It is difficult to imagine a statute more clearly within the constitutional inhibition.

Three years after the statute became effective we decided the case of *Warner v. People,* 71 Colo. 559, 208 Pac. 459. The defendant was convicted of violating section 1, supra. We said:

"This section is part of an act which provides for licensing the business of loaning three hundred dollars or less at a greater rate of interest than twelve per cent per annum and so is within the scope of the title.

"We say nothing as to section 17 because the Attorney General has not assigned error with reference to it."

The exact point decided in the present case was not raised in that case. Here we hold that, for the reasons stated in this opinion, the statute, taken as a whole, is outside of the scope of the title.

In *Beneficial Loan & Investment Co. v. Ira,* 75 Colo. 379, 226 Pac. 136, we declined to consider the objection that sections 13 and 17, supra, are not within the title, that matter not having been called to the attention of the trial court.

In *Rice v. Franklin Loan & Finance Co.*, 82 Colo. 163, 258 Pac. 223, we overruled the contention that section 17, supra, is not embraced in the title. There, also, as in the Warner case, supra, the attack was not a comprehensive attack upon the statute as a whole, such as we have in the present case.

The purpose of the statute, in its entirety, being not only wholly outside of the scope of the title, but actually in contradiction of the purposes expressed therein, the entire statute violates section 21 of article 5 of the state Constitution and for that reason is void.

This situation is called to the attention of the Legislature to the end that, if so disposed, it may remedy the defects in the statute at the approaching session.

The judgment is reversed, and the cause is remanded to the district court with the direction to dismiss the case.

Mr. Justice Campbell and Mr. Justice Burke dissent.

Mr. Chief Justice Adams did not participate.