WILLIAM SOLOMON *vs.* THE SHEPARD COMPANY

JULY 21, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

334

CAPOTOSTO, J. This action of trespass on the case for negligence was tried by a justice of the superior court sitting with a jury and resulted in a verdict for the defendant. The plaintiff's motion for a new trial was denied. The case is now before this court on plaintiff's bill of exceptions, containing an exception to the denial of his motion for a new trial and nineteen other exceptions to rulings during the trial. Excluding exception 5, upon which he relies, the plaintiff has expressly waived the first ten exceptions in his bill of exceptions.

It appears from the evidence that the plaintiff was injured in a collision between a truck in which he was riding, and a truck operated by an agent of the defendant. The accident happened in the early afternoon of December 13, 1934, at the junction of the Taunton Pike and Jacobs street in the town of Seekonk, Massachusetts. Jacobs street does not cross the main highway, known as the Taunton Pike, which runs in a general easterly and westerly direction. It enters that highway from the north at approximately a 45 degree angle. The weather and road conditions were bad. Some snow was falling and the road was slippery because of an icy condition.

The evidence shows that the plaintiff conducts a butcher business in the city of Providence; that he and Hyman Stone each owned one-third of the capital stock of the New England Dairy Cows, Inc., which had no board of directors,

the plaintiff being the president and Stone the vice-president of that corporation; that the corporation had a farm in Seekonk, where cows were kept by the corporation; that the plaintiff went to this farm on the average of two or three times a week on the business of the corporation; and that the truck in which he was riding belonged to the corporation.

The plaintiff testified that on the day of the accident he and Stone, who was driving the truck in an easterly direction on the Pike, were on their way to the farm on "business of the corporation . . . to look at some cattle"; that the plaintiff told Stone to drive "just right, not too fast not too slow"; and that Stone drove at about twenty-five to thirty miles an hour. He further testified that a truck passed them just beyond the Berry Farm, so-called, some three or four miles west of Jacobs street; that he did not know whether they followed this truck or how close they were to it, if they did; and that all he could remember from the time they passed the Berry Farm until he found himself in the hospital after the accident was that he kept telling Stone "he shall be careful."

Stone testified to the same effect up to the time when, according to his testimony, the defendant's truck passed him at the Berry Farm. From then on his testimony in substance is that he followed the defendant's truck at a distance of 40 to 50 feet and at a speed of between 15 and 20 miles an hour, because it was "awful slippery", due to the wet snow freezing on the ground; that on reaching Jacobs street the defendant's truck pulled over to the right and he turned to his left to enter Jacobs street, when the defendant's truck, suddenly and without warning, swung to its left and struck his truck with its side as the two trucks were in the opening of Jacobs street; and that both he and Solomon were thrown out of the truck as it struck a pole to his left at that corner. This witness admitted the paying of a fine of $20 on a charge of driving so as to endanger life at the time of the accident.

The defendant's driver testified that he was driving a closed truck, equipped with a mirror on the left-hand side, which permitted him to see to his rear except for a space of about 50 feet directly in back of the truck; that he did not recall passing any truck between the Berry Farm and Jacobs street; that, as he came to within 200 feet of that street, he reduced his speed from about 25 to 8 or 10 miles an hour; and that, looking in the mirror and seeing nothing to the rear of his truck, he made a wide left turn so as to enter the right-hand side of Jacob street. He further testified that as the front end of his truck entered that street he heard a screeching of brakes, and immediately thereafter his truck was struck in the rear; that he stopped as soon as he could and, walking back to the corner, he saw the plaintiff lying in the road and a truck against a pole at that point, headed in a westerly direction.

It appears in evidence that this witness was fined $2 for failure to give a signal with his hand, or mechanical device, of his intention to make a left turn, as required by section 12, regulations of the Massachusetts Department of Public Works, 1934. The plaintiff also offered to prove, by means of a certain certified record, that this witness had been convicted of driving so as to endanger life as a result of the accident. Upon an examination of that record by the court, this offer of proof was denied. This ruling is the subject of plaintiff's eleventh, twelfth and thirteenth exceptions.

The only other witness on the question of liability was Frank J. Pearl, who was in a field south of the intersection. His testimony, which in some particulars is at variance with a signed statement previously made by him, tends to show that the truck, in which the plaintiff was riding and which, according to this witness, was being driven at an estimated speed of about 40 miles an hour, went into a skid at the intersection; that its rear end moved to the

right in a semi-circle, struck the defendant's truck underneath the tailboard, and then headed for and struck the pole at the corner of the intersection.

The damage to the two trucks, resulting from the accident, in so far as pertient, was as follows. The truck in which the plaintiff was riding had a dent in the body on the right side, with some damage to its front, which Stone attributed to striking the pole. The defendant's truck was equipped with a horizontal spare tire carrier underneath the rear of the truck. The only damage to this truck was that the brackets supporting the carrier were bent and pushed forward about eigth inches.

To prove the law of Massachusetts on the question of imputed negligence, the plaintiff, at the close of his case and with the consent of the defendant, put in evidence three decisions of the Massachusetts supreme court. They are *Griffin* v. *Hustis,* 234 Mass. 95; *Donoghue* v. *Holyoke Street Ry. Co.,* 246 Mass. 485; *Caron* v. *Lynn Sand & Stone Co.,* 270 Mass. 340. In the *Donoghue* case the court considers the question of imputed negligence where the facts show a common or joint enterprise, and, quoting from *Barry* v. *Harding,* 244 Mass. 588, 592, says: " 'As was said in *Barry* v. *Harding* . . . the evidence does not warrant a finding that the plaintiff had an equal right with the driver in respect to the control of the automobile; . . . it does not warrant a finding that he had the power to control the means, or an equal right to direct the conduct of the undertaking.' " In *Caron* v. *Lynn Sand & Stone Co., supra,* the court again refers to the language just quoted from the *Barry* case, *supra,* and applying that law to the facts in the case then before the court, at page 347 of the opinion, says: "Although there was evidence that each plaintiff and Smith were engaged in building operations and all followed the same occupation, there was no evidence to warrant a finding that when the plaintiffs were

riding with Smith they were engaged in any business or occupation in which they were jointly interested."

The defendant in the instant case moved for a directed verdict, without closing its case, at the conclusion of the plaintiff's case. This motion being denied, the defendant then moved for a nonsuit, which was also denied. The defendant was then permitted, over the objection of the plaintiff, to introduce evidence in defense. This ruling of the trial justice is the subject of the plaintiff's fifth exception.

At the conclusion of all the testimony, the court granted a request by the defendant, over the plaintiff's objection, that the following questions be submitted to the jury for special findings. (1) "At the time of the accident were the plaintiff and Hyman Stone engaged in a common enterprise?" (2) "Was Hyman Stone guilty of any negligence which in any respect was a proximate cause of the accident?" The jury answered both questions in the affirmative. The plaintiff's fourteenth exception questions the ruling of the court on this point.

The plaintiff's fifth exception questions the right of a defendant, who moves for a directed verdict without closing his case, to present evidence in defense upon the denial of such motion. The plaintiff takes nothing by this exception. In the ordinary case, the usual motion at the close of the plaintiff's testimony is a motion for a nonsuit, but, in rare instances, a motion for a directed verdict may be made by a defendant without closing his case at that time. Both of these motions are then addressed to the discretion of the court and the denial of such motions is not open to exception. *Oates* v. *Union Railroad Co.,* 27 R. I. 499.

A motion for a nonsuit questions the sufficiency of the plaintiff's evidence in proving a *prima facie* case, while a motion for a directed verdict by a defendant who does not close his case at this stage of the proceedings is based upon the contention that the plaintiff has not a right to a verdict,

in any event. As stated in *Tilden* v. *Rhode Island Co.*, 27 R. I. 482 "if the plaintiff had, by her own testimony, showed a state of facts (such as contributory negligence) which would have precluded her recovery in any event, it would have been proper for the court to direct a verdict for the defendant at that time." *Cranston Print Works Co.* v. *American Tel. & Tel. Co.*, 43 R. I. 88, 92.

The plaintiff directs our attention to the case of *Huebel* v. *Baldwin,* 45 R. I. 40, where this court held that, in a case contesting the probate of a will, the effect of a motion for a directed verdict, by the proponent without closing his case, at the close of contestant's case, is to close the proponent's case, The plaintiff contends that the decision in the *Huebel* case is inconsistent with the decisions in the *Tilden, Oates and Cranston Print Works Co.* cases, *supra,* and, therefore, overruled the practice established by those decisions. We do not agree with this contention. The proceedings in the trial of a probate appeal, involving the validity of a will, differ materially from those in the ordinary case. In a will case the proponent of the will, in accordance with the rules of practice of the superior court, first presents formal evidence of the execution of the will and of testamentary capacity. It is then open to the contestant to present evidence attacking the will. At the close of the contestant's case there is, therefore, evidence in support of and against the validity of the will. A motion for a directed verdict by the proponent at the close of contestant's case in these circumstances was held in the *Huebel* case to amount to a waiver by the proponent of his right to present rebuttal evidence. This situation is quite different from that which prevails in the ordinary case, where the plaintiff's evidence is the only evidence before the court at the close of the plaintiff's case.

In the ordinary case, which is at issue on its merits, it is our opinion that it is not good practice for a defendant to move for a directed verdict at the conclusion of the

plaintiff's case without closing his own case at that time, unless he is willing to waive the right to present evidence in his own defense in the event of an adverse ruling. However, while the making of such a motion, except as just indicated, is contrary to our well-established practice in the ordinary case, the trial justice in the instant case did not err in allowing the defendant, who, in making its motion had expressly reserved the right to present testimony in defense, to introduce such testimony after the denial of its motion for a directed verdict as made. The plaintiff's fifth exception is overruled.

By his eleventh, twelfth and thirteenth exceptions the plaintiff urges that the trial justice erred in excluding a certified copy of a court record, which he alleges shows a conviction of the defendant's driver in Massachusetts for driving so as to endanger life at the time of this accident; and that the trial justice further erred in refusing to allow the plaintiff to ask the driver in the presence of the jury whether he had been so convicted. The record in question, which is among the papers in this case and is identified as plaintiff's exhibit 6 for identification, shows that a "complaint" was issued by the first district court of Bristol, Massachusetts, on January 3, 1935, charging Edward F. X. Grady, the driver of the defendant's truck in the instant case, with operating a motor vehicle negligently, "so that the lives and safety of the public might be endangered"; that Grady pleaded not guilty to the charge and was released on his personal recognizance in the sum of $100, the case being continued to January 29; and that on this latter day the defendant apparently pleaded guilty and the case was "Filed".

The Massachusetts statute, G. L. 1932, chap. 233, sec. 21, provides that: "The conviction of a witness of a crime may be shown to affect his credibility . . . ." In *Commonwealth* v. *Sacco*, 255 Mass. 369, at page 427, the supreme court of that state held that conviction without sentence

is not a conviction within the meaning of that term as used in the statute. The plaintiff admits that the record in question here is inadmissible in evidence according to the law of Massachusetts, but contends that it is competent evidence under our general laws of 1923, chapter 342, sec. 43, which provides that conviction or sentence for any crime or misdemeanor may be shown to affect the credibility of a witness.

We cannot agree with the plaintiff in his contention. Whether the credibility of Grady was to be affected in any way, if at all, by reason of a conviction in Massachusetts, would depend upon whether he was in fact convicted according to the law of that state. The record of the Massachusetts case was such as to make our statute inapplicable, for there was neither conviction nor sentence according to the law of that state.

The trial justice did not err in excluding the record under consideration, which shows that the complaint in Massachusetts against Grady was "Filed" merely, and having knowledge of the contents of that record, he did not err in refusing to allow the plaintiff to question Grady in the presence of the jury as to whether he had been convicted in Massachusetts of driving so as to endanger life. In the circumstances such inquiry would have been improper. Plaintiff's exceptions eleventh, twelfth and thirteenth are overruled.

The two questions for special findings, which were requested by the defendant and submitted by the court, are the subject of plaintiff's fourteenth exception. The issue in the first question was whether, at the time of the accident, the plaintiff and Hyman Stone were engaged in a common enterprise. The plaintiff contends that this was a question of law and therefore not the subject for a special finding. We do not agree with this contention in the circumstances of this case. The accident having happened in Massachusetts, the law of that state as to what constitutes a common

enterprise was a question of fact for the jury to determine from the decisions of the supreme court of that state, which the parties put in evidence by agreement. *Farrell* v. *The Employers Liability Assurance Corp.,* 57 R. I. 389; *Gratton* v. *Harwood,* 53 R. I. 94. The question in the first special finding, therefore, concerned the determination of a question of fact.

The second question for a special finding was whether Stone was guilty of any negligence which in any respect was a proximate cause of the accident. This question was apparently framed by the defendant on the theory that if the evidence showed that Hyman Stone was in fact engaged in a common enterprise with the plaintiff, the negligence of Stone, if any existed and proximately contributed to the accident, would be imputed to the plaintiff according to Massachusetts law. It would have been better if the question had been specifically directed to the determination of some controlling issue of fact, but in the circumstances of this case, it was not prejudicial to the plaintiff, as the court in its charge to the jury fully explained what was meant by "proximate cause". The affirmative answer of the jury to this second question was in accordance with the law as given to them by the court, and is further clearly supported by the evidence. The plaintiff's fourteenth exception is overruled.

The plaintiff's fifteenth, sixteenth, and seventeenth exceptions relate to an addition by the court to the plaintiff's second, fourth and fifth requests to charge. The requests as framed were based upon the theory that the plaintiff was a guest or passenger in the automobile driven by Stone, excluding any consideration of whether he was engaged in a common enterprise with Stone. These requests to charge were given as requested the court adding, however, at the end of each request "unless you find that a joint enterprise existed, when the negligence of Stone would be imputed to the plaintiff Solomon and thereby bar recovery."

This addition was in accord with what the Massachusetts supreme court said in the above-mentioned decisions from that state, which were put in evidence, and which the jury were at liberty to apply if they found as a fact that such was the law of Massachusetts. These exceptions are overruled.

The plaintiff's eighteenth exception is to the denial by the court of his eighth request to charge that the burden of proving a common enterprise was on the defendant. The plaintiff takes nothing by this exception. The subject of the plaintiff's eighth request to charge was fully covered by the trial justice in his charge. Immediately following the statement of the defendant's contention of a joint enterprise, the court instructed the jury as follows: "In the case of *Caron* v. *Lynn Sand and Stone Company,* 270 Mass. 340, the supreme court of Massachusetts held that 'the burden was on the defendant to prove that the plaintiff and Smith (the operator of the car) were engaged in a joint enterprise'." There was no necessity for repeating this instruction, so plainly and directly given. The plaintiff's eighteenth exception is overruled.

The plaintiff's nineteenth exception relates to that part of the charge where the trial justice stated that "To entitle the plaintiff to recover, the negligence of the defendant must be proven to be *the* proximate cause of the collision." (italics ours) This statement was merely introductory to an explanation of what constitutes proximate cause, which immediately follows: The plaintiff's objection to the portion of the charge above quoted is that, as the plaintiff was a passenger, "it left out of consideration negligence on the part of both operators which might have been found to have concurred in proximately causing the collision." The plaintiff takes nothing by this exception. The charge, when read as a whole, amply protects the rights of the plaintiff in respect to the matter about which he complains. It would have been more accurate if the trial justice had said: "a proximate cause" instead of "the proximate cause",

but this possible inaccuracy did not prejudice the plaintiff, as the effect of any concurring negligence on the part of Stone and of the defendant's driver on the plaintiff's right to recover, if the jury found that the plaintiff was riding as a guest or passenger with Stone, was fully covered in the later portions of the charge. The nineteenth exception is therefore overruled.

The plaintiff's twentieth exception relates to the denial of his motion for a new trial. Under this exception he contends that the weight of the evidence does not warrant imputing Stone's negligence to the plaintiff, nor does it support the finding of the trial justice "that there was sufficient and ample evidence on the facts from which the jury could find that Stone and Solomon were engaged in a joint enterprise at the time of the accident and that Stone was negligent in the operation of the car in which the plaintiff was riding." We have examined the evidence and find that we cannot say that the trial justice was clearly wrong in denying the plaintiff's motion for a new trial. This exception is overruled.

The plaintiff, as already stated, has expressly waived all his other exceptions.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

*Israel H. Press, McGovern & Slattery, James A. Higgins,* for plaintiff.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for defendant.