No. 18,036.

A. D. JONES & COMPANY, ET AL. *v.* O. R. PARSONS.
(319 P. [2d] 480)

Decided December 9, 1957. Rehearing denied January 13, 1958.

Messrs. CHISHOLM, HOWARD & DAANE, for plaintiffs in error.

Mr. GAIL HADDOCK, Mr. PAUL DWYER, for defendant in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

THE trial court court adjudged "that [Jones] return to [Parsons] the $1000.00 that was given as a down payment with interest thereon at the legal rate from the time of filing of this suit, and for their [sic] costs expended in this matter." Although the suit against Fishburn was dismissed, he joins Jones in asking us to reverse this judgment on the theory, apparently, that the judgment, erroneously entered, adversely affected him in that the $1000.00 deposit was, by the terms of the contract, to be divided between him and Jones in the event Parsons defaulted.

Whether the judgment should be reversed depends upon the resolution of three questions. (1) Under the circumstances of the case was it error for the trial court, in denying defendants' motion for dismissal at the conclusion of plaintiff's case, to enter judgment for the plaintiff without giving defendants the opportunity to present their proofs? (2) Did the seller of the business and the buyer violate The Liquor Code of 1935, and act contrary to the public policy thereof, in entering into a

contract by the terms of which the buyer agreed not to transfer the liquor license to another location, but upon termination in anywise of the lease of the premises in which the business was conducted, the liquor license would be surrendered to the licensing authority in favor of the landlord? (3) In view of the claims of the plaintiff, and the evidence adduced in support of them, did the trial court properly enter judgment for the return of the deposit to the plaintiff?

By the first count of his complaint Parsons sought to recover the $1000.00 deposit made on a receipt and option agreement, dated September 27, 1954, wherein Parsons was the buyer and A. D. Jones & Company the agent for the seller Fishburn. According to this count, Parsons "was to be granted the licenses necessary to operate the" business "known as the Jackspot's Restaurant," and the "defendants were to provide a proper lease" under which the business could be operated. It further alleged that "defendants were unable to provide a legal or proper lease" under which Parsons could "legally operate" the business.

In the second count of the complaint he alleged by incorporation the receipt and option agreement, the deposit and the relationship of the parties. He further alleged that defendants "were to arrange for a transfer of the lease" to the premises; that a rider was attached to the lease containing the following provisions, among others:

"No. 2. It is expressly understood and agreed that the 3-way liquor license, when issued to the lessees, shall at all times remain at the premises known as 8300 West Colfax Avenue, Lakewood, Colorado, and that said liquor license shall not be removed or transferred therefrom."

"No. 5. Upon the expiration of this lease or any renewal term thereof, or the termination of said lease for any reason, the lessees hereby agree that immediately upon demand of the lessor, the liquor license or licenses

shall be surrendered to the proper licensing authorities in favor of the lessor or his assigns."

The remaining averments of the second count allege in substance that defendants fraudulently concealed the provisions of the rider from Parsons; that such provisions are violative of The Liquor Code of 1935; that Parsons could not pay the obligation arising from the contract within the term of the lease; that he would not have entered into said agreement for the purchase of said business had he known that the lease contained the rider; that he terminated the agreement and demanded to no avail the return of his deposit; and that by reason of the foregoing matters he be awarded $1000.00 damages and $1500.00 exemplary damages.

It becomes unnecessary to relate the purport of, or to consider, the defenses addressed to these counts in consequence of the trial court's treatment of defendants' motion to dismiss made at the conclusion of the plaintiff's evidence. The defendants moved for dismissal and, after argument on the motion, the court entered judgment in favor of plaintiff in the sum of $1000.00 against the defendant A. D. Jones & Company.

By the turn of events in this case a pure question of law emerged from plaintiff's evidence. The testimony discloses that all Parsons' objections to the agreement were removed except those relating to the two provisions in the rider to the lease. Thus, distilled from the evidence is the single question of the legality of these provisions. If illegal, the trial court properly held for plaintiff; if legal, his decision is erroneous.

Ordinarily, the denial of the defendant's motion for dismissal at the close of plaintiff's case entitles the defendant to submit proofs in support of his denials and the affirmative matter set up in his answer. *Porter v. Pincock*, 44 Ida. 235, 256 Pac. 93; *Solomon v. Shepard Co.*, 61 R.I. 332, 200 Atl. 993. See Rule 41 (b) (1), R.C.P. Colo. The denial of such motion is tantamount to a finding by the trial court that plaintiff has made out a prima

facie case requiring the defendant to go forward with his proof. Comprehended in this ruling is oftentimes the indulgence by the trial court of every favorable inference of fact which can legitimately be drawn from plaintiff's evidence. *Shearer v. Snyder,* 115 Colo. 232, 171 P. (2d) 663.

But, as indicated, the case before us does not present the ordinary situation where the defense may produce its proof after an adverse ruling on its motion to dismiss plaintiff's claim for lack of proof. Hence, defendants' assertion of error on the ground that they were not permitted to go forward with their proof need not be further considered.

This brings us to the focal questions: (1) Did the two provisions in the rider to the lease offend against The Liquor Code of 1935? (2) Are they contrary to the policy of the law as declared in the Liquor Code? The correct answers to these questions depend on proper concepts of what inheres in a liquor license as between the state and the licensee, and as between the licensee and third parties.

The Liquor Code of 1935 (C.R.S. '53, 75-2-13) provides that "No license which shall be granted under the provisions of this article shall be transferable, but this shall not prevent the change of location as provided in section 75-2-3." The conditions for change of location in 75-2-3 appear from this language:

"It shall be unlawful for any person:

\* \* \*

"(8) To \* \* \* sell at retail malt, vinous or spirituous liquors except in the permanent location specifically designated in the license for such \* \* \* sale, or in such place to which a licensee may desire to move his or its permanent location. Such licensee may move his permanent location to any other place in the same city, town, or city and county for which the license was originally granted, or in the same county if such license was granted for a place outside the corporate limits of any

city, town, or city and county, but it shall be unlawful to sell any malt, vinous or spirituous liquor at any such place until permission so to do shall be granted by all the licensing authorities herein provided for."

 The liquor license vests a personal right in the licensee to conduct the business; it "confers the right to do that which without the license would be unlawful." *People v. Raims,* 20 Colo. 489, 39 Pac. 341; *Antlers Ass'n v. Hartung,* 85 Colo. 125, 274 Pac. 831; *Gronert v. People,* 95 Colo. 508, 37 P. (2d) 396. This right is coextensive only with the duration of the license. *Commissioners v. Buckley,* 121 Colo. 108, 213 P. (2d) 608. And this right is restricted to a certain location unless a change of location is granted on application to, and after a hearing by, the licensing authority. C.R.S. '53, 75-2-3 and 75-2-10; *MacArthur v. Martelli,* 127 Colo. 308, 255 P. (2d) 969.

A liquor license cannot be obtained except upon payment of fixed fees. See C.R.S. '53, 75-2-17 to 23. The license fees are required to be paid annually. By section 75-2-11 licenses may be revoked by the licensing authority, after notice and hearing, "for any violation by the licensee or by any of the agents, servants or employees of such licensee of the provisions of this article, or any of the rules or regulations authorized hereunder, or of any of the terms, conditions or provisions of the license issued by such authority."

 These are some of the attributes of the right as between the state, as licensor and the licensee. Though not technically property, such license is a valuable right and possesses some of the characteristics of property. The license can be recalled with all other similar licenses during the year only by legislative action; otherwise, it is revocable during the year only for breach of the conditions upon which it was issued. As thus viewed, it "is property within the meaning of the due process clause of the Federal Constitution." *Midwest Beverage Co. v. Gates,* 61 F.S. 688.

It should be observed that the right of the licensee in

440

his relation to the state is narrow, confined and transitory. But, as is true in dealing with relationships in the law, the same circumscriptions may not apply to one which may apply to another. Thus, notwithstanding the licensing authority may grant a license to sell intoxicating liquors at a certain location, a court will enforce a covenant in a deed not to use the premises for vending such liquors.

■ Contractual limitations on the sale of intoxicating liquors generally are not against the statute or its implied or expressed policy. If parties to a contract desire to place restrictions on the sale of such liquors greater than the statute imposes, the law will sanction the agreement. And this is true even though a contracting party gains an advantage thereby.

■ Our statute permits removal to another location of a hotel and restaurant license upon a proper showing. The contract in question provides that the licensee will not exercise this privilege, but upon the termination of the tenancy for any cause, will surrender the license to the licensing authority. This is not a contract for the transfer of a license, which would be in violation of the law; it is a restraint on a privilege. The licensee undertook to refrain from doing that which he had a right to do — a not infrequent form of consideration found in contracts. *Troutman v. Webster,* 82 Colo. 93, 257 Pac. 262.

The first count of the complaint asserted a claim in the nature of rescission. Parsons alleged that defendants were unable to provide a legal or proper lease of the premises. Nothing in the record supports this claim; the lease was legal and proper insofar as it was attacked in this action.

■ By his second count Parsons sought to recover actual and exemplary damages. He charged the defendants with fraudulently concealing the rider to the lease, the provisions of which, he asserted, were in violation of the Liquor Code. This is not a case of the concealment

of a valid rider, for the testimony shows that Parsons' refusal to consummate the transaction was based on the alleged invalidity of the rider.

The trial court granted the relief sought in the first count, i.e., the refund of the deposit. There was no evidence to support this count. Nor were the allegations of the second count and the evidence offered in support thereof sufficient to warrant the judgment entered.

For the reasons herein expressed, the judgment is reversed and the cause remanded with directions to enter judgment for the defendants.

MR. JUSTICE HOLLAND, MR. JUSTICE KNAUSS and MR. JUSTICE SUTTON dissent.