534 P.2d 796 (1975)
WESTERN ALFALFA CORPORATION, a Kansas Corporation, Petitioner-Appellee,
v.
AIR POLLUTION VARIANCE BOARD of the State of Colorado, Respondent-Appellant.
No. 71-494.
Colorado Court of Appeals, Div. II.
January 7, 1975.
Rehearing Denied February 25, 1975.
Certiorari Granted May 22, 1975.
*798 Linde, Thomson, Van Dyke, Fairchild & Langworthy, George D. Blackwood, Jr., Kansas City, Mo., Houtchens, Houtchens & Dooley, S. Robert Houtchens, Greeley, Lee, Bryans, Kelly & Stansfield, Donald D. Cawelti, Denver, for the petitioner-appellee.
Duke W. Dunbar, Atty. Gen., William Tucker, Asst. Atty. Gen., Denver, for respondent-appellant.
Selected for Official Publication.
PIERCE, Judge.
This case is before our court pursuant to remand from the United States Supreme Court, Air Pollution Variance Board v. Western Alfalfa Corp., 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607. Since our first opinion [1] was not selected for official publication, we will reiterate some of the pertinent facts.
On June 16, 1969, Western Alfalfa Corporation (Western) received a cease and desist order from the Division of Administration of the Colorado Department of Health (Division) advising it that emissions from three of its plants in northern Colorado were not in compliance with the Air Pollution Control Act (Act), and ordering it, pursuant to the provision of 1967 Perm.Supp., C.R.S.1963, 66-29-10(3), to cease and desist from any further violations of the Act. Within ten days from receipt of the order, Western filed with the Air Pollution Variance Board (Board) a "written request for a hearing as to whether or not such violation exists or for a variance, or both." 1967 Perm.Supp., C.R. S.1963, 66-29-10(4).
The Board held a hearing in September of 1969. At this hearing, a witness for the state testified that he had made observations on the premises of Western on June 4, 1969, from which he concluded that Western's emissions registered darker in shade than a number two on the Ringelmann chart, contrary to the terms of 1967 Perm.Supp., C.R.S.1963, 66-29-5. He admitted that he did not have his chart with him at the time of his observation and that he was relying on his memory as to the gradations of the chart. Western was not aware of his presence on the premises and no notice was given to Western nor was *799 any consent received from it before the test was made. The Act at that time did not require the investigator to notify the suspected polluter. See 1967 Perm.Supp., C.R.S.1963, 66-29-8(2)(d).
Western attempted to counter the investigator's testimony with Ringelmann readings taken approximately one year earlier by a consulting engineer hired by Western, which showed no violation. They also offered the results of sophisticated tests conducted at their plant by an independent engineering firm some months after they were issued the cease and desist order. The Board determined that Western's testing methods were unacceptable to it, see 1969 Perm.Supp., C.R.S.1963, 66-29-5(2) (e), and therefore it accepted only the testimony of the Department's employee. It was also developed at the hearing that a state operated "smoke school" offered training to all persons in conducting the Ringelmann tests, but only those graduates of the school who were agency employees were certified as experts.
The Board concluded that Western's operations were in violation of the Act. Western sought judicial review pursuant to the terms of 1967 Perm.Supp., C.R.S.1963, 66-29-13. The district court reversed the Board, and we affirmed, holding that the June 4, 1969, inspection constituted an unreasonable search, and that the inspector's failure to announce his presence prevented Western from effectively rebutting the evidence against it, thereby making the hearing fundamentally unfair and denying Western due process of law.
The Colorado Supreme Court denied certiorari. The United States Supreme Court held that the inspection did not constitute an unreasonable search within the meaning of the Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment because it qualified for "the open fields" exception. However, the Court could not discern whether this court's second holding was based on due process under the Colorado Constitution or under the Fourteenth Amendment to the United States Constitution, and remanded for clarification of that issue. Air Pollution Variance Board v. Western Alfalfa Corp., supra.
We adhere to our former opinion on the question of due process. We realize that a state may, under its own constitutional due process provisions, create protections for its citizens which might not be required under the federal due process concept. People v. District Court, 165 Colo. 253, 439 P.2d 741. However, we find no need to create any additional state protection; the pertinent case law and the similitude of the federal and state due process clauses lead us to the conclusion that our decision is compelled by both the Fourteenth Amendment to the United States Constitution and Article II, Section 25 of the Colorado Constitution.
As a preliminary matter, we hold that Western possessed an interest protected by due process. Until the Board's cease and desist order was issued, Western's operations could not have been enjoined, 1967 Perm.Supp., C.R.S.1963, 66-29-14, and no monetary penalty could have been exacted, 1967 Perm.Supp., C.R.S.1963, 66-29-15(1) and (4). Western's freedom from injunction and penalty was an entitlement that could not be taken [2] without due process of law, even though it was not technically a "property" interest and even though it presumably was a matter of legislative grace. Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90; Western Colorado Power Co. v. Public Utilities Commission, 163 Colo. 61, 428 P.2d 922; A. D. Jones & Co. v. Parsons, 136 Colo. 434, 319 P.2d 480.
It is axiomatic in this state and nation that when the sovereign deals with or exercises control over the governed it must do so with "fundamental fairness." Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129; Mountain States Telephone & Telegraph Co. v. Department *800 of Labor and Employment, Colo., 520 P.2d 586. This principle is the ideological basis of the Bill of Rights and the Fourteenth Amendment to the United States Constitution. It also forms the foundation of Article II of the Constitution of the State of Colorado. Therefore, when an agency of the government charges one of the citizenry with a violation of law and conducts proceedings leading to punitive measures, the essence of procedural due process required in those proceedings is fundamental fairness. Morgan v. United States, supra; Mountain States Telephone & Telegraph Co. v. Department of Labor and Employment, supra.
As was stated in Morgan v. United States, supra:
"Congress, in requiring a `full hearing,' had regard to judicial standardsnot in any technical sense but with respect to those fundamental requirements of fairness which are of the essence of due process in a proceeding of a judicial nature.. . . For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play."
Administrators of agencies charged with the enforcement of regulations must keep in mind that the governed have as great an interest in the vindication of the innocent as they do in the punishment of violators and that they must provide those charged with violation of their regulations a reasonable opportunity to defend themselves. Application of Newbern, 175 Cal.App.2d 862, 1 Cal.Rptr. 80.
The Board, in determining whether Western was in violation of the Act, was acting in a quasi-judicial capacity and, under such circumstances, due process requires that every affected party receive notice and an opportunity to be heard. Morgan v. United States, supra; Shoenberg Farms, Inc. v. People, 166 Colo. 199, 444 P.2d 277. To be fundamentally fair and thus comply with this due process requirement, the parties must be given an opportunity to introduce evidence in their own behalf and the alleged violator must be afforded an opportunity, through evidence and argument, to affect the result. Railroad Commission v. Pacific Gas & Electric Co., 302 U.S. 388, 58 S.Ct. 334, 82 L.Ed. 319; Satter v. City of Littleton, Colo., 522 P.2d 95. Moreover, statutory provision for a hearing, such as is found in 1967 Perm.Supp., C.R.S.1963, 66-29-10(4), implies that the parties have the privilege of introducing evidence and that the quasi-judicial tribunal has a duty of deciding in accordance with that evidence. United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081.
In the instant case, Western was given adequate advance notice of the hearing, and was given the "opportunity" to present evidence. However, the Board ruled that the only probative evidence was evidence relating to the alleged violation of June 4, 1969. Since Western had no representative present at the time the test was administered, and since the emitted smoke was constantly dissipating, Western was effectively precluded from entering any affirmative evidence to rebut the evidence against it. Thus, it was forced to rely exclusively on cross-examination of the investigator. The unfairness in such a situation is much greater than where only a portion of a party's evidence is precluded, see Music City, Inc. v. Estate of Duncan, Colo., 523 P.2d 983, or where the right to cross-examination has been only restricted, but not denied, see Satter v. City of Littleton, supra.
Even if we were to assume, arguendo, that forcing an alleged polluter to rely exclusively on cross-examination of the agency's witnesses ordinarily satisfies due process requirements, we find that due process was not satisfied under the circumstances of this case.
*801 Inasmuch as the only evidence supporting the charge was the visual observation of the opacity of smoke during a few seconds or minutes of time by an agent of the agency preferring the charges, a comprehensive cross-examination of that agent was particularly crucial here. However, no effective cross-examination of the investigator was possible to offset the prejudice to Western caused by the Division's failure to notify Western of the inspection until months after it took place. See United States v. Whitaker, 343 F.Supp. 358 (E.D.Pa.). Thus, since the defense had no reference upon which to base its questions nor independent knowledge as to what occurred, its opportunity to cross-examine was merely a hollow gesture.
As a practical matter, the making of the allegation alone, based upon a secret inspection, was tantamount to an automatic determination of violation. Accordingly we rule that where all the real evidence of a violation does by its nature exist only temporarily and where that evidence can be preserved only through the subjective observations of an employee of the agency, the fundamental fairness requirement of due process dictates that the alleged violator, whether individual or corporate, must, in an administrative proceeding, be given notice of the fact that evidence is being gathered and be afforded a reasonable opportunity to be present or otherwise be provided with an adequate opportunity to gather similar probative evidence.
Our conclusion, that 1967 Perm. Supp., C.R.S.1963, 66-29-8(2) (d), is infused by due process to include a reasonable notice, is buttressed by the General Assembly's amendments to the statute. Those amendments, 1969 Perm.Supp., C.R. S.1963, 66-29-8(2) (d), and 1971 Perm. Supp., C.R.S.1963, 66-31-10(2) (d), provide the Board with authority to obtain warrants to enter and inspect property when such entry is denied or not consented to by the occupier. Thus they clearly imply that, except in cases of emergency, notice of, and consent to, the entry and inspection must first be obtained. The legislature has recognized by these amendments that where evidence is continually dissipating and the inspection subjective, fairness requires that the subject of an inspection be made aware that tests are being made and that he should have contemporary knowledge of the alleged violation in order that he might have a reasonable opportunity to defend against an allegation of violation.
On the basis that Western was denied due process of law under the Fourteenth Amendment to the United States Constitution and Article II, Section 25 of the Constitution of the State of Colorado, we affirm the judgment of the district court.
SILVERSTEIN, C. J., and RULAND, J., concur.
NOTES
[1] Reported at 510 P.2d 907.
[2] In this case, the Board's determination resulted in an actual "taking" of the entitle ment; contrast Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307.