[April Term, 1928]

## SLANE v. CURTIS

(No. 1481; July 17, 1928; 269 Pac. 31)
(Rehearing Denied Oct. 9th, 1928)

2

*Chester R. Ingle,* for appellant.

*William L. Simpson* and *Milward L. Simpson,* for respondent.

4

RINER, Justice.

This case is before the court upon direct appeal from a judgment of the District Court of Hot Springs County, Wyoming. The facts shown by the record, and which in our judgment are necessary to be considered in disposing of the cause, are these:

On September 2, 1925, W. T. Slane, plaintiff and appellant, hereinafter referred to as the "appellant"—being the owner of Lot 21 in Block 2 of the town of Thermopolis, Wyoming, upon which was a building containing two stores —leased this property to C..A. Mulock and Mary Mulock for the term of fifteen years, and at the same time made a contract in writing with them whereby the lessees agreed to make certain alterations and repairs at their own expense, whereby the major part of the premises could be used only as a moving picture theatre, and the two front rooms of the building only for the conduct of ordinary store business. This lease and construction contract were each duly executed and acknowledged by the parties thereto and placed of record in the office of the County Clerk of Hot Springs County, Wyoming, at the same time, viz. 2 :30 p. m., September 4, 1925. The contract providing for the alterations and new construction work, after reciting the execution of the lease already mentioned, contains these two paragraphs, to-wit:

"Now Therefore, In consideration of the entering into of the said lease between the said first party and the said second parties, the said second parties agree to and with the first party as follows:

"That they will at their own expense complete the construction of the alteration and repair of said building to conform with plans and specifications hereto attached and by reference made a part hereof, which are hereby accepted by first party, the same to conform to the laws and ordinances of the State and that of Municipal Corporations."

And also certain other clauses which read:

"It is expressly agreed that at the expiration of this contract, by forfeiture or by the termination of said lease that all material and erections made upon said premises and for which payment has been made by said second parties, under the plans and specifications attached shall become and remain the property of the said first party.

"On the expiration of said lease and contract it is agreed that the alterations and repairs upon said building herein-

after designated and described shall become the property of the first party, viz: electric wiring, all plumbing and plumbing fixtures, all heat apparatus and radiators, the picture machine booth.

"The parties of the second part are permitted to remove from said building and premises on the expiration of the term in said lease and agreement and as provided therein, all opera chairs, moving picture machines, and their or its accessories of every nature or kind, draperies, rugs, scenery, picture screens, curtains, mirrors, electric fans, ventilating systems installed, electric fixtures, except wiring, all mats, either leather or steel, and all musical instruments."

Pursuant to this lease and agreement, the lessees took possession of the premises and made the alterations and repairs provided for, which lengthened and enlarged the building so that it could be used as a moving picture theater. As was agreed, they also furnished it with plumbing, heating, electric fixtures, wiring and other equipment. The various changes in the building were finally completed in November, 1925. Thereafter the lessees operated a moving picture theater in the building until about June, 1926.

After the completion of the construction work, and on December 30, 1925, there was recorded a chattel mortgage given by C. A. Mulock and Mary Mulock on that date to the Polar Oil Company, of which company H. D. Curtis, defendant and respondent—hereinafter mentioned as "respondent"—appears to have been the president and business manager. This mortgage was given to secure the payment of the sum of $10,000 by the Mulocks to the Polar Oil Company and purported to cover property described as follows:

"All and singular the equipment of every nature or kind now situated and being kept in the Iris Theater Building situated on lot twenty-one (21) Block two (2) Original Townsite of the Town of Thermopolis, such as all seats, curtains, moving picture machines, and all equipment thereof, piano, musical instruments, Electric lighting and fixtures of every kind and description, plate glass, windows, advertising signs, in or out of said building, rugs, linoleum, stage

fixtures, and heating and lighting plant, and each and every thing and item said building contains, however described herein and in use or to be used in conducting the so-called Iris Theater, the property of the parties of the first part,"

and other property not material to be considered here.

Accompanying this instrument and of even date therewith, was an assignment to the Polar Oil Company by the Mulocks of all their interest in the lease we have mentioned, the assignment thereof to be held as security also for the payment of the said sum of $10,000 "according to the condition of a certain promissory note." This assignment was recorded the same day the mortgage was placed of record.

In June, 1926, respondent advised appellant that he had taken over the lease of the theater from the Mulocks and would run it. He appears—as he testified—to have been acting as trustee and business manager in settling up the Mulock transaction on behalf of both the Polar Oil Company and others who it seems had loaned money to the Mulocks and who, for convenience, may be referred to herein as the "Reed Interests." On December 15, 1926, there was acknowledged by respondent, as president and chief executive officer of the Polar Oil Company, and placed of record on December 22, 1926, an instrument designated a "Release and Satisfaction," which recited that:

"The payment of the said assignment in the said sum of $10,000.00 and interest having been fully liquidated and made and the note given as an evidence of said settlement, having been surrendered to said C. A. and Mary Mulock.

"THEREFORE, By these presents the said Polar Oil Company, a Corporation, hereby releases and fully satisfies said indebtedness and all thereof and releases the security made and given by said assignment heretofore referred to, to the said C. A. Mulock and Mary Mulock, their heirs or assigns and hereby quit-claims and releases all persons or parties in interest by reason of the premises as to said assignment and the property covered thereby."

Respondent conducted the Theater and paid the rent due on the lease until some time in February, 1927. During that and the preceding month, negotiations were undertaken between respondent and appellant—who was then in California—looking to a reduction of rent, and also another alteration in the building, which involved its discontinuance for use as a theater building and rearrangement as store premises. These negotiations coming to naught, respondent —despite appellant's protest—removed from the building the property covered by the chattel mortgage already mentioned.

On February 23, 1927, this action was commenced, seeking an injunction to restrain respondent from removing the property from the building and also asking damages in the sum of $3,000 for its removal. The District Court Commissioner issued an injunction order, but it seems not to have prevented removal of all the property claimed by respondent. The latter, after doing this, ceased to pay rent, and surrendered the premises. Subsequent to the commencement of the action and before respondent filed his answer, the chattel mortgage held by the Polar Oil Company, mentioned above, appears to have been foreclosed by advertisement, the proceedings culminating in a sale on March 19, 1927, to that company of all the property taken from the theater building. Thereafter respondent filed an answer wherein he claimed the right to remove the property from appellant's building, by virtue of the aforesaid chattel mortgage and the sale thereunder. It is alleged also in this pleading that one Frances E. Reed was the owner—by a bill of sale and possession under chattel mortgage—of some of the property placed in the theater building by the Mulocks. However, neither in the answer of respondent nor from the evidence in the record is it at all clear just what property in which Frances E. Reed was interested, either as owner or mortgagee was placed in appellant's building. A reply was filed in substance denying the new matter set forth in the answer.

The case was tried to the court, taken under advisement, and on July 15, 1927, a judgment was entered, finding for the respondent and against the appellant and that the respondent had the right, under the lease and agreement, to remove the property which he had taken from the building; it was therefore adjudged that appellant take nothing by his action.

It is assigned and argued by appellant as error, that the judgment is not supported by the evidence and is contrary to law. We think that this contention must be upheld.

The controlling question of the case is,—what property did respondent have the legal right to remove from the building of appellant?

As is already clear from the outline of respondent's answer given above, his claim of right to take from the building the property he did is based, first, upon his representation as trustee of the interest which Frances E. Reed held as owner through certain chattle mortgages and a bill of sale upon certain property previously owned by the Mulocks and located in the Whiting Theater in Thermopolis, Wyoming, some of which is asserted to have been placed in appellant's building by the Mulocks, and, second, is predicated upon a similar representation by him of the interest of the Polar Oil Company through the chattel mortgage given by the Mulocks on December 30, 1925, and the foreclosure proceedings had thereunder.

Respondent's claim through the Reed interests may be disposed of briefly. It is apparent from the record that not the slightest objection or complaint was made by those holding or representing that interest or by respondent, conversant as they were with what was being done by the Mulocks in moving the property from the Whiting Theater into appellant's building. Indeed, no complaint on that score seems to have been forthcoming from the Reed interests during the year and more that the theater business in appellant's property was in operation. However this may be, there is no certain proof as to just what property was

carried over to appellant's building from the Whiting Theater, except possibly one or two mirrors of comparatively little value. It is perfectly obvious from the record, too, that the property described in the construction agreement made coincident with the lease between the Mulocks and the appellant, and which, under terms of that agreement, was not to be removed at the termination of the lease, was not embraced in either the chattel mortgages or the bill of sale on the Whiting Theater property given by the Mulocks to Frances E. Reed or the Reed Company.

It remains, therefore, to be determined what rights respondent could insist upon as established through the chattel mortgage to the Polar Oil Company. It will be remembered that the lease and the construction agreement—whereby the theater was brought into operation—were made and recorded at one and the same time. They were executed as parts of one transaction. The rule of construction to be applied, under such circumstances, to these instruments, is well known. In Gardt v. Brown, 113 Ill. 475, 478, it is said:

"No rule of interpretation is more familiar, than when two instruments are executed as the evidence of one transaction, they shall be read and construed as one instrument."

And 35 C. J., page 1182, Sec. 479, states the rule to be:

"In order to determine what was intended by a lease, separate or different instruments may be construed together, where they are executed at the same time, and relate to the same subject matter and are between the same parties, or where they are parts of the same transaction."

See also 13 C. J. 528, Sec. 487, and extended list of cases there given.

Under the lease and agreement—read as one instrument, as we think they should be—it is beyond controversy that as between appellant and the Mulocks, the electric wiring, all the plumbing and heating fixtures, all heating apparatus

and radiators and the picture machine booth, could not legally be removed by the Mulocks from the building, and the other property listed in that agreement could be, upon the termination of the lease. In Ewell on Fixtures, (2d Ed.) 215, 216, we find this language used:

"It is well settled that the general right of removing fixtures erected by the tenant during his term, as also the time within which he may exercise that right, are almost entirely within the control of the parties, and may, as between the landlord and tenant, be restricted, modified, or extended, according to the agreement of the parties, subject, of course, to the limitation that such agreement does not violate the express provision of any law, and that the interest of the public generally, or of third persons in particular, shall not be injuriously affected by its fulfillment. Subject to these limitations, *modus et conventio vincunt legem.*"

And the same text again says, at page 223, 224:

"Agreements modifying the right of removing fixtures may be contained either in the original contract of letting the premises or some contemporaneous agreement, or they may be entered into subsequently to the original demise. Such agreements may enlarge and extend what would otherwise be the rights of the tenant, either as respects the time within which the right should be exercised; or they may restrict or entirely divest the tenant of such rights."

The cases cited by the author, in support of his text, fortify his conclusions. See also Bache, Receiver, vs. Central Coal and Coke Co., 127 Ark. 397, 192 S. W. 225.

It is said that the lease only was assigned to the Polar Oil Company, and that that company was not affected by the terms of the construction agreement relating to the building in which the theater business was ultimately conducted. To this we cannot assent. The lease and the agreement, as we have already intimated, are really in legal effect one instrument. They were parts of the same transaction, were recorded at the same time, and must be construed

together. The Polar Oil Company can hardly take over the lease, which was granted only in consideration of the execution also by the parties thereto of the construction agreement, with its several specific clauses concerning the removal of property from the building, and not be bound by those clauses as well as by the terms of the lease. The Polar Oil Company, when it took its chattel mortgage from the Mulocks, necessarily had notice of their rights and obligations under these instruments recorded months before. That company could only obtain by the chattel mortgage and sale of the property under it, the rights which the Mulocks had under the prior lease and construction agreement, and no more. What those rights were as to removal of property, the construction agreement makes perfectly plain. Respondent, as the successor in interest of the Mulocks, must assume both the burdens and the benefits under their contract. This being so, we find it unnecessary to consider what the effect of the surrender of the Mulocks' note for $10,000 and the execution of an express release, duly acknowledged and recorded, was, upon the foreclosure of the chattel mortgage given to secure its payment. There appears testimony in the record that this indebtedness had not been paid, although the note was surrendered, though just how that occurred is not altogether clear.

Whatever property affixed to the realty by the Mulocks, yet removed by respondent, which may not certainly be covered by the construction agreement, supra, would, of course, be controlled by the general law of fixtures, regard being particularly had to the rule governing so-called trade fixtures, which appears well stated in 2 Underhill, Landlord and Tenant, Sec. 376, thus:

"The strict rule of the early common law under which chattels which had been physically annexed to the freehold became the absolute property of the landlord has been gradually and greatly relaxed in favor of tenants. The first exception to this rule was made in the case of trade fixtures so called such as were placed upon the premises by the tenant during the term for the purpose of carrying on trade,

commerce, or manufacture. It is now a general rule that whatsoever is affixed as a trade fixture to the land or to any building which is on the land during the term, whether made of wood, stone, iron, or other material, is removable by the tenant at the end of the term.''

See also as approving the statement of the rule, Ballard v. Alaska Theater Co., 93 Wash. 655, 161 Pac. 478.

Entertaining these views, we are constrained to decide that the judgment should be reversed, with instructions to the trial court to determine simply the value of the property illegally removed by respondent, as indicated by what we have, in this opinion, said, and to enter a judgment for the amount so found to be due in favor of the appellant.

*Reversed.*

BLUME, C. J., and KIMBALL, J., concur.

### ON PETITION FOR REHEARING

RINER, Justice.

A petition for rehearing has been filed by respondent, but a careful examination of the authorities and arguments presented with it have not convinced us that we were wrong in the conclusions set forth in the opinion heretofore announced in this case. However it has come to our notice that counsel have some doubt as to the procedure to be followed by the trial court in disposing of the case upon its return there. In our opinion the direction was that the trial court should ''determine simply the value of the property illegally removed by respondent as indicated by what we have in this opinion said'' and should enter a judgment for the amount so found to be due in favor of appellant. We consider this direction reasonably clear, but that there may be no mistake about it, the intent was to have the trial court determine the value, as above indicated, after listening to such testimony and evidence as the parties might be advised to submit. It was not at all intended that the

matter should be determined upon the record as previously made in the court below.

The petition for rehearing is, accordingly, denied.

*Rehearing Denied.*

BLUME, C. J., and KIMBALL, J., concur.