[No. 38655.    Department Two.    June 22, 1967.]

INTERSTATE HOSTS, INC., *Respondent,* v. AIRPORT CONCESSIONS, INC., *Appellant.**

*Franco, Asia, Bensussen & Coe,* for appellant.

*Hoover, Lind & Parkhurst,* for respondent.

LANGENBACH, J.†—In this action the assignee of the sublessor's interest in a certain sublease sued the sublessee, seeking a declaratory judgment.

On April 11, 1949, the Port of Seattle entered into a lease with Allied Foods, Inc., relating to concessions at the Seattle-Tacoma Airport. That lease, which will hereafter be referred to as the "Basic Lease," read in part as follows:

> WHEREAS the Port of Seattle has . . . acquired property known as the Seattle-Tacoma Airport . . . and is now completing the construction on said property of an administration building . . . and WHEREAS, the administration building will house facilities for public concessions . . . and WHEREAS, the Port believes it to be to the best interests . . . that the concessions be operated in the administration building by lease to a single reliable operator . . . Now, THEREFORE, . . . the Port does hereby demise and let unto the Lessee . . . those certain premises, . . . hereinafter more particularly set forth . . . and all located

*Reported in 429 P.2d 245.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38) state constitution.

within the Seattle-Tacoma Airport Administration Building on the Seattle-Tacoma Airport, the legal description of which is heretofore set forth and detailed in Exhibits . . . and which exhibits include specific description of the demised areas on each floor of the Administration Building.

It is understood and agreed that the Lessee will have the exclusive use of the hereinabove described premises . . . .

On February 14, 1951, Allied Foods, Inc., entered into a lease with the appellant, Airport Concessions, Inc. This lease, which will hereafter be referred to as the "Sublease," read in part as follows:

WHEREAS, ALLIED FOODS, INC., has leased from the PORT OF SEATTLE, as Lessor, certain portions of the Administration Building situate upon the Seattle-Tacoma Airport . . . under the terms of a certain lease agreement dated May 11, 1949, [sic] . . . and WHEREAS, Lessee hereunder desires to sub-lease certain portions of the space in said Administration Building subject to all of the terms and conditions of said basic lease, . . .

Now, Therefore,

1. . . . the Lessee does hereby rent and lease from the Lessor, the news and cigar stand space located on the first floor of said Administration Building, . . . .

. . . .

6. . . . Lessee shall have the exclusive sales of cigars, cigarettes, chewing gum, candy bars, magazines and newspapers, and shall also be allowed to sell any other items customarily sold at a news and cigar stand.

On April 8, 1963, Allied Foods, Inc., sold its concession rights (including its sublessor's interest in the February 14, 1951, sublease with appellant) to Interstate Hosts, Inc., the respondent. Thereafter, respondent sued appellant seeking a declaratory judgment to settle questions of construction and respective rights under the sublease. Essentially, the dispute arose because while the sublease granted appellant exclusive sales of certain items and authority to sell other items customarily sold at a news and cigar stand, the sublease did not specify where the exclusive rights were to apply, nor did it define items customarily sold at a news

and cigar stand. The court, having entered findings of fact and conclusions of law, entered two judgments from which appellant brought this appeal.

Appellant attacked by motion to dismiss the use of the declaratory judgment procedure in this action. We agree with the trial court that the issues presented here were a proper subject for declaratory judgment.

Under the sublease, appellant received both news and cigar stand space in the administration building and the exclusive right to sell certain items. Respondent sought a declaratory judgment that appellant had no exclusive sales rights "in any area other than the sub-leased area." In this context the word "area" appears to have referred to the area of exclusive sales subleased to appellant, the scope of which area was a central issue in this litigation. However, after the oral opinion was delivered, appellant began by motion the argument that "area" referred to the cigar stand, and that respondent had a right only to a declaration with regard to that area. Therefore, the court went beyond the complaint when it declared the area over which appellant had exclusive sales rights. Appellant asserted that if it could show that the court went beyond respondent's complaint, it could require the court to declare all of its rights under the sublease, although this had not before been requested. We are not convinced that the trial court went beyond the prayer of the complaint. We note, too, that respondent also prayed for "such other and further relief as the Court may deem fit and proper." The trial court did not err in failing to grant appellant's motion to limit findings to appellant's interpretation of respondent's pleadings.

Appellant attacked several findings of fact made by the trial court, and argued that the Supreme Court can review questions of fact although findings of fact have been entered by the trial court, citing, *e.g., Smith v. Seattle,* 178 Wash. 477, 35 P.2d 27 (1934). However, as we pointed out in *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 575, 343 P.2d 183 (1959), "If we were of the opinion that the trial court should have resolved the factual dispute the

other way, the constitution does not authorize this court to substitute its findings for that of the trial court."

> The rule is that, if the findings made by the trial court are supported by substantial evidence in the record, this court can not and will not substitute its own findings . . . for those of the trial court, even though this court might have resolved the factual dispute the other way and made different or contrary findings, were it the trier of the facts. (Citing case.) *Industrial Elec.-Seattle, Inc. v. Bosko,* 67 Wn.2d 783, 791, 410 P.2d 10 (1966).

The trial court decreed that appellant, "does not have any exclusive rights pursuant to the terms of the Sub-Lease between plaintiff and defendant to sell merchandise in any areas other than the Administration Building . . . . " Appellant argued that in determining that appellant's exclusive sales rights were limited to the administration building the court erred. We do not agree. The sublease, as noted above, did not specify where the grant of exclusive sales rights was to apply. But it is clear that they could be no broader than those granted to the sublessor in the basic lease. It will be noted in that portion of the basic lease already quoted that the areas actually demised are clearly described as "all located within the Seattle-Tacoma Airport Administration Building." And further, "that the concessions be operated in the administration building by lease to a single reliable operator . . . ."

Appellant also assigned error to the court's determination that for purposes of the lease, the concourses are not part of the administration building. It relied heavily, for example, upon the affidavit of David Brazier, president of the construction company which built two concourses. It was Mr. Brazier's opinion that the concourses "are all a part of the original Administration building." Appellant's attorney also pointed out, *inter alia,* that architect's plans were entitled "Seattle-Tacoma Airport Administration Building South Concourse Extension." To rely upon such data, however, is to ignore the fact that the issue here is less architectural than legal. The issue is the precise legal meaning to be given the words "Administration Building" as used in

the basic lease. It is the legal construction given those words in the basic lease which defines the spatial boundaries of appellant's exclusive rights. When the words were used in the basic lease, no concourses had yet radiated from the administration building. Years would pass before they would be built. Their subsequent construction raised the question of whether, under a reasonable construction of the lease, they were part of the premises demised. The trial court held that they were not, and we are satisfied that the evidence does not preponderate against that finding.

Allied Foods, Inc., as sole original concessionaire, handled both the sale of gifts and the sale of newspapers and tobacco products at the airport. When Allied Foods, Inc. severed the news and cigar stand business, together with relevant exclusive rights, by entering into the sublease which is the subject of this action, it sold appellant its entire news and cigar stand inventory. Appellant argued that the items included in this inventory should be declared items customarily sold in a news and cigar stand. But the problem was to determine not the items sold in *this* cigar stand but rather "items *customarily* sold in *a* news and cigar stand." After hearing much evidence the trial court found that certain standards of price and quality separated items sold in a news and cigar stand from those sold in a gift shop. It was the trial court's opinion that a number of items in appellant's inventory were actually gift items.

The court, in its oral opinion, set general guidelines for distinguishing gift items from cigar stand items and then gave the parties an opportunity to come to an agreement on specific items. When the parties failed to do so, the court set forth, in additional findings, a list of items which are customarily sold in a news and cigar stand.

Appellant assigned error to the court thus "limiting appellant to the items set forth," but we cannot read into the court's findings, conclusion or judgment such limitation. The court itself believed that the evidence was such as only to permit it to set general guidelines. It considered the items listed in its findings to be clearly within those guide-

lines as items customarily sold in a news and cigar stand. But the court recognized that it would be extremely difficult to enter a decree listing, item by item, the permissible extent of appellant's inventory.

The court indicated in its oral opinion items which it considered were not customarily sold at a news and cigar stand and then set forth in its findings those items which it found were so customarily sold. A reading of these two general lists resulted in as definite a description of "items customarily sold at a news and cigar stand" as it was feasible to develop in the case as it was tried.

The judgments are affirmed.

FINLEY, C. J., HUNTER and HAMILTON, JJ., concur.

August 21, 1967. Petition for rehearing denied.