MOUNTAIN WEST FARM BUREAU MU-
TUAL INSURANCE COMPANY, INC.,
a corporation, Appellant (Plaintiff be-
low),

v.

HALLMARK INSURANCE COMPANY, a
corporation, Appellee
(Defendant below).

No. 4621.

Supreme Court of Wyoming.

March 10, 1977.

Paul B. Godfrey, Godfrey & Sundahl, Cheyenne, for appellant.

T. Michael Golden, MacPherson & Golden, Rawlins, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

Sims and Nelson, a partnership, hereinafter designated S & N, owned land upon which were located rodeo facilities—chutes, pens, corrals, etc., known as the Valley Station Rodeo Grounds. Delinger and Stingley planned to stage a one-day rodeo and, for that purpose, rented or leased the Valley Station Rodeo Grounds from S & N. The S & N partners, in an effort to protect themselves and their partnership from liability arising from the rodeo operation, entered into a contract with Delinger and Stingley, in which S & N was party of the first part and Delinger and Stingley were second parties and which contained the following language:

"First parties will not be held responsible or assume any liabilities for any accidents incurred by Second Parties, contestants, spectators, or livestock and/or personal property on the above described properties during the terms of this agreement."[1]

There is no evidence to indicate Mountain West or Hallmark had any knowledge of the agreement between their respective insureds containing the hereinabove quoted "hold-harmless" clause until after the day of the rodeo.

After consummating this agreement, Delinger and Stingley purchased insurance from appellee-Hallmark to protect them in the event they were to incur liability resulting from the rodeo activities, and this policy has been made a part of the record. At all times prior to, during, and after the incidents giving rise to the issues in litigation here, S & N was alleged to be covered by appellant-Mountain West's liability insurance policy, but Mountain West, for some unexplained reason, has not made its policy a part of the record.

The complaint purports to frame an action for declaratory judgment, and in an apparent effort to bring itself within the jurisdictional requirements of the Uniform Declaratory Judgments Act [§§ 1–1049 to 1–1064, W.S.1957, 1975 Cum.Supp.], Mountain West alleges:

"An actual controversy exists between the parties hereto and the plaintiff has no adequate remedy at law."[2]

The appellant's prayer for relief is as follows:

"WHEREFORE, the plaintiff respectfully requests that the Court declare the *rights and liabilities of the defendant* under the terms of *each and every policy issued by the defendant* relative to the rodeo above described and *adjudge that the defendant is liable under its* respective *policy for the payment of any claim or judgment that might be asserted* on or [sic] *by Mary Ann Anderson,* or any party in privity with her; *that the Court fur-*

---

1. Hereafter we will refer to this as the "hold-harmless" clause—not to give it legal significance—but for purpose of identification only.

2. It was necessary for the plaintiff to allege and for the complaint to disclose a justiciable ("actual") controversy in order to meet the jurisdictional requirements. *Anderson v. Wyoming Development Co.,* 60 Wyo. 417, 154 P.2d 318.

*ther find that it is the obligation of the defendant to assume the defense of any lawsuit* that might be brought as the result of the described accident; that the Court further declare and determine any other rights of the parties hereto that may be necessary to accomplish a final and equitable adjudication of the rights and interests of the parties hereto with respect to the matters herein set forth; that *the Court determine that the plaintiff has no obligation to either defend any claim or to pay any claim or judgment* that might be asserted as the result of the accident in question until such time as the defendant has fully exhausted all of its obligations and duties relative to said matters; and for such other relief as to the Court may seem proper in the premises." [3]   [Emphasis supplied]

During the rodeo performance May Ann Anderson, one of the spectators, was injured when a fence pole upon which she was sitting gave way. When this action was filed, Mary Ann had not brought suit against either S & N or Delinger and Stingley. However, the plaintiff-appellant, Mountain West, alleges in its complaint that she threatens to.

Mountain West urges that since Delinger and Stingley purchased liability insurance coverage from Hallmark, and since they also entered into an agreement with S & N which holds S & N harmless, it follows that Hallmark's policy protects S & N, thereby relieving Mountain West from liability which it would otherwise have under its policy with S & N.

The appellee-Hallmark's defense to this contention is that the language of the contract between S & N and Delinger and Stingley does not structure a "hold-harmless" agreement and, therefore, does not serve to cause Hallmark's policy to extend liability coverage to S & N.

In granting Hallmark-appellee's motion for summary judgment, the district court held:

"1.   There is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law.

"2.   Paragraph three (3) of that one certain lease agreement dated April 22, 1974, entered into by and between the parties' respective insureds, which recites:

First Parties [plaintiff's insured] will not be held responsible or assume any liabilities for any accidents incurred by Second Parties [Defendant's insured], contestants, spectators, or livestock and/or personal property on the above described properties during the term of this agreement.

is neither by its terms, nor shown to be by the depositions of the parties to the lessee [sic], an indemnity or 'hold harmless' clause.

"3.   Each party, that is, the plaintiff and defendant herein, has the obligation to defend its respective insured and to satisfy such judgment, if any, as may be entered against such insured in any proceeding brought against such insured as a result of the accident referred to in the complaint on file herein.

"4.   The defendant has no duty or obligation to defend plaintiff's insured or to satisfy such judgment, if any, as may be entered against such insured in any proceeding brought against such insured as a result of the accident referred to in the complaint on file herein."

We will reverse the judgment.

We hold that the trial court lacked jurisdiction to make and enter a summary judgment under the Declaratory Judgments Act. We reach this conclusion for the reason that we find no justiciable controversy to be present with respect to any issue decided by the trial court.

■   As we have said before, even where the parties have not raised the jurisdictional question—as is the case here—if jurisdictional defects in fact exist, we have an

---

**3.** To pray for declaratory relief is not, in and of itself, sufficient to constitute a claim as one for declaratory judgment. *Goodson v. Smith,* 69 Wyo. 439, 243 P.2d 163, reh. den. 69 Wyo. 439, 244 P.2d 805.

obligation to and will raise them ourselves. *Pritchard v. State, Div. of Voc. Rehab., Dept. of H. S. S.,* Wyo., 540 P.2d 523, at page 524, with citations.[4]

### THE JURISDICTIONAL QUESTION

This action was filed under the auspices of the Uniform Declaratory Judgments Act [§§ 1–1049 to 1–1064, W.S.1957, 1975 Cum. Supp.]. The right of an interested party to have a determination made under the Act is defined in § 1–1052, W.S.1957, 1975 Cum. Supp., as follows:

"*Any person interested under a* deed, will, written *contract* or other writings constituting a contract, *or whose rights, status or other legal relations are affected by a* statute, municipal ordinance, *contract* or franchise, *may have determined any question of construction or validity arising under the* instrument, statute, ordinance, *contract,* or franchise *and obtain a declaration of rights, status or other legal relations thereunder.*" [Emphasis supplied]

The appellant seeks to have its "status" and "rights" determined as a person "interested" under the "hold-harmless" clause of the contract between S & N and Delinger and Stingley, to which neither of the insurance companies were parties, and seeks a further determination of the rights and obligations of the two insurance companies, based *only* upon the terms of Hallmark's policy, to which Mountain West is not a party.

■ Before the offices of the courts will be assigned to such a declaratory judgment resolution, it must first appear that the litigant seeking the declaration has an interest (is "interested") (§ 1–1052, supra). We have said that the declaratory judgment vehicle cannot be called upon to secure advisory opinions[5] and thus a controversy must be demonstrated in which the parties have a real as distinguished from a theoretical concern. In 22 Am.Jur.2d, Declaratory Judgments § 10, "Actual controversy," p. 848, it is said:

"... No proceeding lies under the declaratory judgment acts to obtain a judgment which is merely advisory, or which merely answers a moot or abstract question. *In other words, the courts have no jurisdiction to deal with theoretical problems, academic matters, or hypothetical and speculative questions.*" [Footnotes omitted and emphasis supplied.]

The statutory mandate to the effect that a party who seeks a declaration of his or her "rights, status, or other legal relations" (§ 1–1052, supra) under a contract must first show his *interest* is but an expression of the basic declaratory judgment law requirement, which denies access to the services of the act unless the parties' controversy is real and not merely imagined—in other words, *it must be justiciable.*

It is said in 22 Am.Jur.2d, Declaratory Judgments § 11, "What constitutes actual controversy; justiciable controversy," p. 849:

"... [I]t is generally held that such a controversy must involve something more than a mere difference of opinion; *it must involve persons adversely interested in matters in respect of which a declaration is sought.* ..." [Emphasis supplied]

We have previously held that before the courts of this state may entertain a declaratory judgment action, a "justiciable controversy" must exist. We said in *Anderson,* supra, at page 336 of 154 P.2d:

"From these authorities it is fairly to be concluded that in order that the operation of the Declaratory Judgments Act may be invoked it is necessary that there should be a justiciable controversy; ..."

---

4. The citations are: *Big Horn Coal Co. v. Sheridan-Wyoming Coal Co.,* 67 Wyo. 300, 224 P.2d 172, 177; *Wyoming State Treasurer ex rel. Workmen's Compensation Department v. Niezwaag,* Wyo., 444 P.2d 327, 328; *Bowman v. Worland School District,* Wyo., 531 P.2d 889, 890; *Gardner v. Walker,* Wyo., 373 P.2d 598, 599; and *Tobin v. Pursel,* Wyo., 539 P.2d 361, 363.

5. *Brimmer v. Thomson,* Wyo., 521 P.2d 574.

In *Brimmer v. Thomson, supra,* at 521 P.2d, page 578, we approved a summary of requirements necessary to constitute a justiciable controversy as expressed through the opinion of the Supreme Court of Washington in *Sorenson v. City of Bellingham,* 80 Wash.2d 547, 496 P.2d 512, 517, where that court said:

"' * * * First, a justiciable controversy requires parties having existing and genuine, as distinguished from theoretical, rights or interests. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion. Third, it must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, *or, wanting these qualities be of such great and overriding public moment as to constitute the legal equivalent of all of them.* Finally, the proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues. Any controversy lacking these elements becomes an exercise in academics and is not properly before the courts for solution. (Emphasis supplied.)' "[6] [Emphasis in original]

▉ The necessity for a justiciable controversy is generally held to be a *jurisdictional* requirement. While many courts avoid the word "jurisdiction" when discussing the necessity of a justiciable controversy, using such words as "requirement to maintain," "condition precedent," "cannot be maintained," and "basis for maintaining," such injunctions are synonymous with jurisdictional requirement. This court has also described it as "the threshold question." *Cranston v. Thomson,* Wyo., 530 P.2d 726, 728. The following cases, however, speak of this as a necessary basis of jurisdiction: *Cummings Construction Company v. School District No. 9, Coos County,* 242 Or. 106, 408 P.2d 80, 81; *City of Mobile v. Scott,* 278 Ala. 388, 178 So.2d 545; *Planned Parenthood Center of Tucson, Inc. v. Marks,* 17 Ariz.App. 308, 497 P.2d 534. Federal cases where the statutes employ the words "actual controversy" which hold that the court has no jurisdiction unless this be existent are: *Firemen's Fund Insurance Company v. Dunlap,* 4 Cir., 317 F.2d 443, 444, and *Southern Railway Company v. Brotherhood of Locomotive Firemen and Enginemen,* D.C.Ga., 223 F.Supp. 296, affirmed without opinion 324 F.2d 503.

We have previously held that the presence of a justiciable controversy is a jurisdictional requirement. We said in *Anderson, supra,* at 154 P.2d, page 336:

"' . . . [I]t has been universally held that *before a court can take jurisdiction* under declaratory judgment statutes, there must be an actual and justiciable controversy . . . .' " [Emphasis supplied]

This further statement appears in *Anderson:*

"' . . . Therefore, the controversy between the plaintiffs and the defendant in this proceeding must be of such a nature as would warrant a court of law or equity in taking *jurisdiction,* if the same were asserted in some other proceeding.' " [Emphasis supplied]

## THE INSURANCE CONTRACTS

▉ Mountain West had no such interest in Hallmark's liability insurance agreement insuring Delinger and Stingley as would permit it to maintain an action thereon. We said as long ago as 1877:

" . . . It is well settled that in no case can a stranger to a contract maintain an action upon it, or for the breach of it; save in the exceptional cases where the promisee was considered merely the agent for the stranger and where the stranger was regarded as the trustee of the party to whom the promise is made:

---

**6.** See *Cranston v. Thomson,* Wyo., 530 P.2d 726, where the same requisites were reiterated.

. . ." *McCarteney v. Wyoming National Bank,* 1 Wyo. 386, 391 (1877).

Since Mountain West's policy was not made part of the record, and there being no other evidence of Mountain West's interest in the Hallmark policy, Mountain West seems to be squarely confronted with the *McCarteney* rule unless the declaratory judgments act comes to its rescue.

■ The declaratory judgment vehicle is much employed as a method for determining rights and liabilities between insurance companies and their insureds and between insurance companies upon their policies. This is an appropriate method of ascertaining which of two carriers are or may be held liable to a third party under their policies. 22 Am.Jur.2d, Declaratory Judgments § 40, "Generally," pp. 894–895. The text says:

"While it has been held that a declaratory judgment statute which contains no reference to 'contracts' does not authorize a declaratory judgment involving an insurance contract, where the declaratory judgment statute applies to 'any written contract or other writings constituting a contract,' insurance contracts come within the purview of the statute. Furthermore, the declaratory judgment action has been found to be a convenient method of determining controversies between insurance companies themselves, either by direct actions or by joinder or intervention, with respect to such questions as which of two or more insurers is liable under its particular policy and their respective liabilities and obligations." [Footnote numbers and referenced citations deleted]

Where the contracts of insurance are before the court and a claim under the contracts has either been lodged or is threatened concerning which the companies are in disagreement as to their "exposure," a justiciable controversy may, in these circumstances, be created.

In *Anderson,* Declaratory Judgments, Vol. 1, Chapter 2, § 22, page 83, it is said:

"A justiciable controversy is presented, in an action by one insurance company against another, where there had been issued policies by both insuring the same property, and which had been destroyed, but the amount of the loss was undisputed, and it was sought to establish whether the one or the other, or both, were liable for the loss, and in the event of the liability of both, then the amount each should pay." Citing *Louisville Fire & Marine Insurance Company v. St. Paul Fire & Marine Ins. Co.,* 252 Ala. 532, 41 So.2d 585.

Where the policies of different companies covered the same vehicle, it was held in *St. Paul Fire & Marine Insurance Company v. Aetna Casualty & Surety Company,* 10 Cir., 357 F.2d 315, 316 (1966):

". . . The duties and rights of the insurers as to the insured's indemnity against loss created an actual controversy within the meaning of 28 U.S.C. § 2201 which could appropriately be adjudicated by a declaratory judgment action. E. g., *West American Ins. Co. v. Allstate Ins. Co.,* 10 Cir., 295 F.2d 513; *Lumbermens Mutual Casualty Co. v. Borden Co.,* S.D.N.Y., 241 F.Supp. 683 and cases cited therein. See *Bennett v. Preferred Acc. Ins. Co.,* 10 Cir., 192 F.2d 748; *St. Paul-Mercury Indemnity Co. v. Martin,* 10 Cir., 190 F.2d 455."

■ Mountain West, having determined not to place its policy before the court, cannot, therefore, show itself to be possessed of such an interest in the policy of Hallmark as will satisfy the statutory provision which mandates that, before the declaratory judgment act will be available, the plaintiff must be a "person interested under a . . . contract." (§ 1–1052, W.S.1957) No citations have been given—we have found none—nor are we likely to find authority for the proposition that a justiciable issue can be structured out of the mere request of a liability insurance company, which does not place its own policy in evidence, to have a defendant insurance company declared liable to a potential claimant under the terms of the defendant's policy.

A judgment under such factual conditions seeking to declare and define the rights of the companies as to each other and their respective insureds would not meet the tests of *Brimmer v. Thomson,* supra—and particularly would amount to no more than a declaration of theoretical rights and interests.

When argument upon the motion for summary judgment was heard, the court, for the reasons set out above, had no jurisdiction to declare and define the rights of the insurance companies as to each other and as to their respective insureds, as was done under paragraphs 3 and 4 of the judgment, supra.

### THE "HOLD–HARMLESS" CLAUSE

■ For most of the same reasons given for holding the trial court not to have jurisdiction to declare the rights, duties and obligations of the insurance company parties under the contract of Hallmark, the trial court had no jurisdiction to enter a declaratory judgment respecting the rights of the parties hereto in the "hold-harmless" agreement. *Neither* of the parties to this litigation were parties to the S & N-Delinger-Stingley contract with respect to which declaratory judgment is sought.

The *McCarteney* rule, supra, would preclude maintaining an action upon an agreement to which the parties to the litigation were not privy. The declaratory judgment statutes do not come to the aid of the litigants here because they have no interest in the contract with respect to which they seek to have their rights, duties and obligations adjudicated. If they have no interest in the agreement, there is no justiciable issue between them. There being no justiciable issue, there is an additional jurisdictional defect for all the reasons and according to the authorities heretofore set out with respect to the court's lack of jurisdiction to declare the rights of the parties and their insureds under Hallmark's liability policy.

In consequence, the district court, in considering the rights, duties and obligations of the insurance company parties and S & N

and Delinger and Stingley under the "hold-harmless" clause, was without jurisdiction to enter judgment as was done under paragraph 2 thereof.

The trial court having lacked jurisdiction, the judgment is reversed and the case is remanded to that court with orders to enter an order dismissing the cause for want of jurisdiction.

Reversed.