Wayne F. KURPJUWEIT and Luann M. Kurpjuweit, d/b/a Town & Country Tavern, and Dora Harvey, Appellants (Defendants),

v.

NORTHWESTERN DEVELOPMENT COMPANY, INC., a Wyoming corporation, Appellee (Plaintiff).

No. 84–264.

Supreme Court of Wyoming.

Oct. 15, 1985.

---

Bruce P. Badley, Clay B. Jenkins, and Fred R. Dollison (argued) of Badley and Rasmussen, P.C., Sheridan, for appellants (defendants).

E.E. Lonabaugh and Jeffrey J. Gonda (argued) of Lonabaugh and Riggs, Sheridan, for appellee (plaintiff).

Before THOMAS, C.J., ROSE, ROONEY and CARDINE, JJ., and GUTHRIE, J., Retired.

CARDINE, Justice.

In February of 1984, appellants Wayne F. and Luann H. Kurpjuweit (Kurpjuweits), the owner-operators of the Town and Country Tavern in Sheridan, Wyoming, were notified by the appellee, Northwestern Development Company, Inc. (Northwestern), that Northwestern had decided not to renew or renegotiate the lease for the bar premises. In short order a dispute developed over who would be entitled to the liquor license for the bar at the conclusion of the lease term on October 1, 1984. The Kurpjuweits and Northwestern each filed competing applications with the Sheridan County Board of Commissioners for issuance of the license. When the county commissioners refused to issue a license to either party pending a court determination of their respective rights under the lease, Northwestern filed a complaint in the district court seeking a declaratory judgment construing the terms of the lease as it concerned the status of the liquor license. Following a trial before the court on September 26, 1984, the district judge found in favor of Northwestern stating that he found Northwestern "has been the equitable owner of the license and is entitled to have the license issued in its name * *." A written Judgment and Order was entered two days later from which appellants bring this appeal.

In their brief the appellants provide the following as their statement of the issues before the court:

1. "The district court erred in enforcing a lease provision which was void because it was contrary to the statutes of the state of Wyoming regulating the sale of alcoholic beverages, Wyoming Statutes 12–4–601 through 12–4–604."

2. "The district court erred in failing to grant appellants' motion to dismiss, for lack of jurisdiction and lack of a justiciable controversy contrary to Wyoming Statutes 12–4–101 et seq. and 16–3–101 et seq."

Northwestern counters this articulation with the following:

"1. Was the Lease Agreement which governed the relationship of the parties a legal contract and did the District Court properly enforce the provisions of that Lease?

"2. Did the District Court have jurisdiction over this matter pursuant to the provisions of Wyoming Statutes Section 1–37–101 through 1–37–115 W.S.A. 1977?

"3. Did the Appellants give any consideration for the liquor license and are they entitled to any preferential treatment insofar as issuance of the license is concerned?"

We affirm the judgment of the district court.

The focus of the present appeal is the liquor license issued by the Sheridan County Board of Commissioners under which the Town and Country Tavern was operated. The building and real property where the bar was located have been owned by Northwestern since 1958 when title was transferred to the corporation by Robert I. Diefenderfer, Jr., one of its incorporators and first president, in exchange for stock.

Diefenderfer was also the holder of the liquor license for the premises which was not transferred to the corporation despite an earlier agreement that Diefenderfer would transfer all his interest in the liquor business to Northwestern. The reason the liquor license was not transferred to the corporation was that Northwestern had leased the bar premises to a third party to whom the liquor license was directly transferred at the suggestion of the county clerk to avoid a double transfer. In that lease, like the lease under which appellants eventually operated the bar, there is a provision requiring the lessees to keep and maintain the liquor license on the premises in good order including obtaining its renewal as needed, and upon termination of the lease "without consideration, re-assign and re-transfer said liquor license or any subsequent license that may be issued by the Board of County Commissioners of Sheridan County, Wyoming to First Party [Northwestern] or its assigns."

At the termination of each subsequent lease the liquor license was transferred directly to each new lessee. In each succeeding lease, a term substantially identical to that quoted above was part of the lease terms.

A lease between Northwestern and Michael P. and Frances M. Pinder with a primary term of five years was executed on October 1, 1974. That lease contained an option to renew for an additional five-year term at its expiration; and, importantly, it required:

> "LESSEES warrant that the license for said premises can be put in their name and that they have been residents of the State of Wyoming for one (1) year."

It is at this juncture that Kurpjuweits began negotiations with the Pinders for purchase of the bar. In order to accomplish a transfer to the Kurpjuweits, who as nonresidents were prohibited from holding a Wyoming liquor license under § 12–9(C)(10), W.S.1957, a scheme was devised to use a third party, appellant Dora Harvey, as a "strawman" for purposes of the transaction.

On October 29, 1974, the Pinders and Harvey executed a Memorandum of Agreement of Sale for the sale of the bar business and transfer of the liquor license. On the same day, a second Memorandum of Agreement of Sale was entered into between Harvey and Kurpjuweits which agreement paralleled the provisions of the Northwestern-Harvey agreement with the exception that the transfer of the liquor license was to take place as soon as possible *after* July 1, 1975, when Kurpjuweits would attain residency. The Northwestern-Pinder lease was assigned to Harvey the following day.

On November 21, 1974, an Option Agreement between Harvey and Kurpjuweits was entered into which recited that the bar business and liquor license would be transferred to Kurpjuweits subject to the approval of the county commissioners on July 1, 1975, and that until that date the Kurpjuweits would operate the bar as employees of Harvey. The agreements as drafted

satisfied the requirements of our licensing statutes and, if bona fide and operated by Harvey, may have been lawful. It is clear, however, and stipulated to by the parties that no salaries were ever paid Kurpjuweits by Harvey. In fact, in her testimony, Dora Harvey indicated that she was paid by Kurpjuweits to allow the use of her name in order to effectuate the transfer of the liquor license and bar in a manner which circumvented the residency requirements of the licensing statutes. In *Scranton v. Whitlock*, Wyo., 389 P.2d 1015, 1017 (1964), we said:

> "The mentioned statutes [§§ 12–13, 12–9, 12–1, W.S.1957] if interpreted reasonably would seem to preclude the operation of a retail liquor business in the State by one person when the license to that business is in the name of another * * *."

Here Kurpjuweits were operating the liquor business when the license was in Harvey's name. It is apparent from the record that this arrangement was known to all parties, including Northwestern, who was also a party to the arrangement made to circumvent the intent and purpose of the licensing statutes. Finally, the arrangement was known to and had the implicit approval of the Sheridan County Board of Commissioners who acquiesced in the transfer of the liquor license to Harvey to hold in her name until the appellants became residents. The issues presented to us in this case concern only the effect and validity of the lease provision requiring reassignment of the license to Northwestern. Accordingly, in conformance with our long-standing rule under which we refuse consideration of questions not directly before us, we decline to consider or determine the lawfulness of the transfer of this license to appellants.

The Northwestern-Pinder lease was assigned by Harvey without obtaining Northwestern's approval to Kurpjuweits on July 2, 1975. On the same date the liquor license was also assigned to Kurpjuweits who continued to operate the business pursuant to the lease until July 25, 1979, when they and Harvey exercised the option to

renew the lease for an additional five-year period. In September of 1983, the Kurpjuweits notified Northwestern of their desire to extend the lease for an additional term. Northwestern, on February 8, 1984, gave notice to the Kurpjuweits that it would not renew or negotiate a new lease at the end of the lease term when it expired on October 1, 1984.

On March 16, 1984, Kurpjuweits filed an application for renewal and transfer of the liquor license to a new location after October 1, 1984. In addition, that application indicated they intended to change the name of the business to LuWayne's Liquor on that date. On April 13, 1984, the Kurpjuweits received a Notice of Termination of the lease from Northwestern who had also filed for renewal of the license requesting it remain at the leased premises. An amended application for renewal and transfer was filed by Kurpjuweits on July 31, 1984, requesting the license be transferred to a different location from that described in their first application. The board of county commissioners refused to issue a license to either party pending a judicial determination of their contractual rights under the lease agreement.

The present action was brought under the auspices of the Uniform Declaratory Judgments Act which has been enacted by our legislature and codified as §§ 1–37–101 to 1–37–115, W.S.1977. In particular, the complaint in this action seeks a determination of the parties' respective rights and interests under the Northwestern-Pinder lease. Section 1–37–103, W.S.1977, provides:

"Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations."

Leases are contractual in nature. *Slane v. Curtis*, 39 Wyo. 1, 269 P. 31 (1928). Other jurisdictions have held that declaratory judgment is an appropriate remedy to determine the legal relations between parties under a lease of real property. *Gillmor v. Gillmor*, Utah, 596 P.2d 645 (1979); *Interstate Hosts, Inc. v. Airport Concessions, Inc.*, 71 Wash.2d 487, 429 P.2d 245 (1967); *Milwaukee Hotel Wisconsin Company v. Aldrich*, 265 Wis. 402, 62 N.W.2d 14 (1953); and cases cited in Annot., 60 A.L.R.2d 400 (1958). This court in *Bragg v. Marion*, Wyo., 663 P.2d 505 (1983), held that, provided a justiciable controversy is present, declaratory judgment is a proper remedy for construction of a deed or other muniment of title. Given the remedial nature of the remedy provided, *Poling v. North American Life and Casualty Company*, Wyo., 593 P.2d 568 (1979) and § 1–37–114, W.S.1977, we hold that declaratory judgment is available to construe the provisions of lease agreements provided the other jurisdictional requirements have been met.

Appellants argue that the jurisdiction of the district court, and consequently that of this court, was not properly invoked. It is contended that the district court usurped the power of the licensing authority, the Sheridan County Board of Commissioners, by deciding which of two competing applicants was to receive a liquor license. Appellants also make vague reference to a "lack of justiciable controversy" and "failure to exhaust administrative remedies" without demonstrating how these concepts are involved in the controversy currently before the court. Mere incantations of legal phraseology do not require the attention or consideration of this court; cogent authority and argument must be presented. In the absence of such authority or argument, this court has often refused to consider purported issues on appeal. *Tremblay v. Reid*, Wyo., 700 P.2d 391 (1985), and *Haddenham v. Board of County Commissioners of County of Carbon*, Wyo., 679 P.2d 429 (1984).

■ We are, however, under an independent duty to examine whether this court's jurisdiction has been properly invoked, even where the parties have not raised the jurisdictional issue. *White v. Board of Land Commissioners*, Wyo., 595 P.2d 76 (1979). When considering the issue of whether a declaratory judgment is proper under the circumstances, we have carefully examined the record before us to ascertain whether the jurisdictional prerequisite of a justiciable controversy has been satisfied. *Carlson v. Bratton*, Wyo., 681 P.2d 1333 (1984); *Mountain West Farm Bureau Mutual Insurance Company, Inc. v. Hallmark Insurance Company*, Wyo., 561 P.2d 706 (1977); and *Anderson v. Wyoming Development Company*, 60 Wyo. 417, 154 P.2d 318 (1944). A declaratory judgment cannot be used as a vehicle to secure an advisory opinion. *Langdon v. Aetna Life Insurance Company*, Wyo., 640 P.2d 1092 (1982); *White v. Board of Land Commissioners*, supra; and *Cranston v. Thomson*, Wyo., 530 P.2d 726 (1975). In *Brimmer v. Thomson*, Wyo., 521 P.2d 574, 578 (1974), we quoted the following test from *Sorenson v. City of Bellingham*, 80 Wash.2d 547, 496 P.2d 512, 517 (1972):

" 'First, a justiciable controversy requires parties having existing and genuine, as distinguished from theoretical, rights or interests. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion. Third, it must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, *or, wanting these qualities be of such great and overriding public moment as to constitute the legal equivalent of all of them.* Finally, the proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues. Any controversy lacking these elements becomes an exercise in academics and is not properly before the courts for solution.' " (Emphasis in original.)

■ These requirements have been satisfied in the present appeal. Appellants and Northwestern have real and existing adverse interests in the construction given to the terms of the Northwestern-Pinder lease. In particular, the parties will be directly affected by a judicial determination of the enforceability of the clause requiring the lessee at the termination of the lease to reassign and retransfer the liquor license to Northwestern.[1] The judgment of the court, while not determinative of the right to issuance of a liquor license, can establish the rights and responsibilities of the parties under the lease. While the court cannot direct issuance of a liquor license to either party, it can fashion a remedy requiring the losing party to take those actions nec-

---

1. That provision required as follows:
   "It is agreed between the parties that LESSEES shall continue to operate on said premises, a tavern and liquor store and that LESSEES shall not in any way endeavor to move the location of said tavern or liquor store from said premises and that the license issued by the Board of County Commissioners of Sheridan County, Wyoming, shall at all times remain with said location. LESSEES further agree that they will keep and maintain said liquor license in good order and will at all proper times, apply to the Board of County Commissioners for a renewal of same and that at the termination of this lease, LESSEES shall, if said lease is not extended or renewed by LESSOR, without consideration, reassign and retransfer said liquor license or any subsequent liquor license that may be issued by the Board of County Commissioners of Sheridan County, Wyoming, to LESSOR or its assigns * * *. In the event LESSEES, for any reason cease to operate a bar and tavern on said leased premises, then LESSEES, if LESSEES are unable to sell their business and assets to a qualified, acceptable third person, upon receiving a written request from LESSOR, shall immediately reassign and retransfer said liquor license or any subsequent liquor license that they may hold for said premises, to LESSOR."

essary for reassignment of the license or payment of damages.

Appellants have argued that the district court, by exercising its jurisdiction to construe the terms of the lease, has usurped the power of the county commissioners who are charged by statute with the determination of issues concerning the issuance of liquor licenses. Section 12–4–101, et seq., W.S.1977.

■ This argument misconstrues the nature of the remedy provided by the Uniform Declaratory Judgments Act, §§ 1–37–101 to 1–37–115, W.S.1977. The court can construe an agreement, in this case a lease, and provide the parties with a determination of their respective rights and liabilities under the agreement. *Holly Sugar Corporation v. Fritzler*, 42 Wyo. 446, 296 P. 206 (1931). Declaratory judgment cannot be used to usurp or replace specific administrative relief, particularly, as in the present case, when the initial decision is committed to an administrative body. *City of Cheyenne v. Sims*, Wyo., 521 P.2d 1347 (1974). Our legislature has placed the responsibility of regulating the retail sale of alcoholic and malt beverages upon incorporated cities, towns, and counties who are the licensing authorities. Section 12–4–101, et seq., W.S.1977; *Walker v. Board of County Commissioners*, Wyo., 644 P.2d 772 (1982).

It is argued that the provision in the lease requiring reassignment or transfer of the liquor license to Northwestern should be held to be illegal and unenforceable as being violative of the provisions of § 12–4–102(b), W.S.1977, which provides:

"No person or partner shall have any interest, directly or indirectly, in a license or permit unless he signs and verifies the application for the license or permit. No corporation shall be granted a license or permit unless two (2) or more of the officers or directors sign and verify the application on behalf of the corporation and also verify upon their oath as individuals that the statements and provisions are true."

Given the manner in which they originally acquired their interest in the liquor license, appellants' newly-found concern for following statutory provisions is admirable and rather suspect. Nevertheless, appellee has presented its application for the license to the licensing authority, and the duty to determine whether appellee satisfies statutory requirements and meets qualifications for holding a license belongs to the licensing authority.

Other courts which have construed similar agreements requiring the transfer of a liquor license to a lessor at the conclusion of a lease term have generally found that such agreements can be drawn and enforced subject to the other requirements for approval of the transfer by the licensing authority. *Uptick Corporation v. Ahlin*, 103 Idaho 364, 647 P.2d 1236 (1982); *Greve v. Leger, Ltd.*, 64 Cal.2d 853, 52 Cal.Rptr. 9, 415 P.2d 824 (1966); *Beard v. McCormick*, 147 Mont. 361, 411 P.2d 964 (1966); *A.D. Jones & Company v. Parsons*, 136 Colo. 434, 319 P.2d 480 (1957).

Transfers and assignments of the liquor licenses are authorized by § 12–4–601(b), W.S.1977, which provides:

"A licensee, or the executor or administrator of the estate of a deceased licensee, may assign and transfer the license or permit by a sale made in good faith. The assignment and transfer shall first have the approval of the licensing authority, which consideration shall be based in part upon a public hearing and an application filed under oath by the assignee or transferee showing the person or entity to be qualified to hold a license or permit under Wyoming law. The approval of the transfer shall not be given by the licensing authority if proceedings are pending to suspend, revoke or otherwise penalize the original license or permit holder. A transfer of a license or permit shall not require the payment of any additional license fee for the transfer and upon assignment the assignee may exercise the privilege of continuing the business authorized by the license or permit."

In *Scranton v. Whitlock*, supra, 389 P.2d at 1018, this court quoted the following with approval:

"A license to sell liquor, being a mere personal privilege, is generally held not to be assignable or transferable, except where a statute so provides, and then only in the manner and form prescribed." 30 Am.Jur. Intoxicating Liquors § 167.

In *Scranton v. Whitlock*, supra, this court was confronted by a situation in which the actual operators of a bar did not hold the liquor license in their own name. Rather, the license was held by the persons from whom the bar was being purchased. We found the arrangement between the sellers and purchasers of the bar to be illegal and unenforceable for the reason that it was an attempt to transfer the liquor license without the consent of the licensing authority. We find expressed in our statutes a policy of requiring the actual operator of the retail liquor establishment to be exposed to the scrutiny of the licensing process including a public hearing. See also *Johnson v. Smith*, Wyo., 455 P.2d 244 (1969); *Hill v. Hamilton*, Wyo., 368 P.2d 957 (1962); and *Bogus v. American National Bank of Cheyenne*, 401 F.2d 458 (10th Cir.1968).

In the present case, § 12–4–601(b), W.S. 1977, requires that prior to the transfer or assignment of a liquor license, the assignee or transferee must file an application under oath demonstrating his qualification to be a holder of a license under Wyoming law. The transfer or assignment can only be approved by the licensing authority after publication of notice and a public hearing on the application for transfer. The licensing authority is free to reject a proposed transfer if it finds that the proposed transferee or assignee is not an appropriate person or entity to hold a license and operate such a business.

We hold that the provision of the lease containing the requirement that appellants transfer the liquor license to Northwestern at the conclusion of the lease is valid and enforceable *as between the parties*. Any such transfer is, however, subject to the provisions of § 12–4–601(b), W.S.1977, requiring a public hearing and approval by the licensing authority. Appellants have not argued, and we do not address, the question of whether such a transfer would be pursuant to a "sale made in good faith." As an appellate court, we cannot prosecute an independent inquiry for errors upon which an appellant could possibly rely and may invoke abandonment or waiver where such errors are not asserted by the parties. *Scranton v. Whitlock*, supra, 389 P.2d at 1018.

We find expressed in the trial court's Judgment and Order an awareness that any such transfer is subject to the approval of the licensing authority. It finds that the lease provision is valid and enforceable between the parties. The court's judgment as to the validity of that portion of the lease agreement does not bind the county commissioners to allow the transfer. This assignment cannot affect or limit the discretion of the board, nor does it grant assignee any preference, right or privilege. It is beyond the power of any person to bind a license to any particular set of premises. The licensing authority still must follow the statutory procedures and exercise its independent judgment whether such transfer should be allowed.

Affirmed.